23CA0791 Marriage of Stanton 10-17-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0791
El Paso County District Court No. 20DR62
Honorable David Prince, Judge

In re the Marriage of

Sean P. Stanton,

Appellee,

and

Stephanie May Stanton, n/k/a Stephanie May Barrett,

Appellant.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE SCHOCK
Fox and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 17, 2024

Artemis Law, Leigh Horton, Denver, Colorado, for Appellee

Paige Mackey Murray, LLC, Paige Mackey Murray, Boulder, Colorado, for Appellant

¶ 1 In this post-dissolution of marriage proceeding between Stephanie May Stanton, n/k/a Stephanie May Barrett (mother), and Sean P. Stanton (father), mother appeals the district court order modifying parenting time for the parties' child and designating father as the child's primary residential parent. We affirm the order and remand for the district court to consider mother's request for appellate attorney fees.

## I. Relevant Facts

¶ 2 The parties' marriage ended in 2020. At that time, they agreed that their only child, who was then nearly two and a half years old, would live with mother in New Hampshire and that father would have parenting time in Colorado, where he lived, as well as in New Hampshire. The parties also agreed to shared decision-making responsibility and reasonable telephone and video communication with the child when he was in the care of the other.

¶ 3 In January 2021, the district court entered an order finding that mother had not worked in good faith to honor the parties' agreement concerning telephone and video contact and had been primarily responsible for disruptions to the agreed-upon schedule. The court ordered a specific schedule of video contact four days per

1

week.  The order provided that mother could not cancel or change a scheduled contact more than three times per month, and "[i]f [mother] conclude[d] she must" change or cancel a contact time, she was to reschedule at father's convenience the following day.

¶ 4     Nearly a year later, father filed a motion concerning parenting time disputes under section 14-10-129.5, C.R.S. 2024.  He alleged that mother had violated the January 2021 order; refused to involve father in medical, therapy, and educational decisions for the child; and refused to give father her new phone number after changing it. He further asserted that mother was endangering the child and asked to become the child's primary residential parent.

¶ 5     At mother's request, the district court appointed a parental responsibilities evaluator (PRE).  The PRE completed an investigation that included home visits in New Hampshire and Colorado, as well as interviews with the parties, the child's maternal grandmother, the child, and other individuals who know the child.

¶ 6     The PRE found, among other things, that mother and maternal grandmother were engaging in "alienating behaviors" and that "without a change in [the child's] environment, his ability to develop a positive relationship with Father will be impossible."  The

PRE also concluded that (1) mother's "enmeshment with maternal grandmother" was "endangering [the child] emotionally"; (2) the child's current environment "significantly impairs the child's emotional development"; (3) "the harm likely to be caused by a change in the child's environment is outweighed by the advantage of a change to the child"; and (4) a change in physical custody is necessary to serve the best interest of the child. The PRE recommended that father be given primary physical custody.

¶ 7    After holding an evidentiary hearing, the district court entered an order adopting the PRE report and naming father the child's primary residential parent in Colorado. The court noted that father's request was governed by the "endangerment" standard, and it summarized the PRE's conclusion that "the child's development (primarily emotional development) is endangered by the current parenting arrangement." The court explained that it agreed with the PRE's findings and analysis. It reasoned as follows:

> [T]he change of primary residential parent recommended by the PRE will be difficult and stressful for the child. A reasonable overall summary of the Court's analysis is that the child is unlikely to be permitted to develop a healthy relationship with both parents in the current situation and the child is likely to

continue to be placed under great stress by [mother's] household regarding the conflict between the parents over mutually developed parenting relationships. However, a change in primary residential parent provides the best opportunity for the child to develop a healthy relationship with *both* parents and the best chance for lessening the stress placed on the child by the parents' relational competition. Additionally, [father] appears better equipped to recognize his shortcomings in communication and parental skills development that need to be addressed. As compared to [mother], [father] appears to have a stronger potential to address these challenges productively . . . .

¶ 8 The district court later issued a post-hearing order further clarifying its reasoning for the parenting time modification. Among other things, the court found that (1) mother had violated the parenting time order; (2) mother "affirmatively discourage[d] the sharing of love, affection, and contact between [father] and the child"; (3) the child's existing circumstances endangered the child; and (4) the modification served the child's best interests.

## II. Analysis

¶ 9 Mother contends that the district court failed to conduct the required three-step analysis for parenting time modifications that

change the child's primary residential parent.  She also asserts that the evidence was insufficient to satisfy that test.  We disagree.

### A.  Applicable Law and Standard of Review

¶ 10   When a court finds that a parent has violated a parenting time order, it may issue an order modifying the previous order to meet the best interests of the child.  § 14-10-129.5(2)(b).  But when such an order would substantially change the parenting time and change the party with whom the child resides a majority of the time, the court must apply the heightened standard in section 14-10-129(2), C.R.S. 2024.  *In re Marriage of Schlundt*, 2021 COA 58, ¶ 30.

¶ 11   Under section 14-10-129(2), the district court cannot substantially modify parenting time and change the child's primary residential parent unless it finds that a change has occurred in the child's or primary residential parent's circumstances and that the modification is necessary to serve the child's best interests. Moreover, the court must retain the prior parenting time schedule unless, as relevant here, (1) the child's present environment significantly impairs the child's emotional development, and (2) the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.  § 14-10-129(2)(d).

¶ 12    Thus, the court must apply "a three-step analytical process." *Schlundt*, ¶ 35 (citation omitted).  First, it must start from a presumption that the prior order shall be retained.  *Id.*  Second, it must find that "the child is endangered by the status quo and that modifying the existing order will create advantages that outweigh any harm caused by the modification."  *Id.*  Third, it must find that the proposed modification is in the child's best interests.  *Id.*

¶ 13    We review a district court order modifying an existing parenting time order for an abuse of discretion, exercising every presumption in favor of upholding its decision.  *In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 13; *In re Marriage of Barker*, 251 P.3d 591, 592 (Colo. App. 2010).  We review de novo whether the district court correctly applied the law.  *In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15.

## B.    Presumption

¶ 14    Mother first argues that the district court did not apply the presumption that the prior parenting time order be retained.

¶ 15    We acknowledge that the district court did not explicitly cite the presumption.  But it recognized that the "endangerment" standard applied — in other words, that the parenting time order

6

could be modified only if father demonstrated that the child was endangered by the child's current environment. And it expressly found that this standard was satisfied. In doing so, the district court effectively applied the presumption, even if it did not refer to it as such. *Cf. Schlundt*, ¶ 36 (holding that court failed to apply the presumption where it did not make findings necessary to overcome it). We therefore see no error at the first step of the analysis.

### C. Endangerment Finding

¶ 16 Mother next argues that the district court's analysis fails at the second step because (1) the record does not support the finding that the child's emotional development was significantly impaired by the existing parenting arrangement, and (2) the court did not sufficiently consider the harm caused by the modification and weigh that harm against the advantages. We disagree on both points. Although there was evidence pointing in both directions, including evidence tending to suggest that the child's emotional development was *not* significantly impaired, we conclude that there is sufficient evidence in the record to support the district court's findings.

## 1. Significant Impairment

¶ 17    The district court expressly incorporated the PRE's conclusion that the child's emotional development is endangered by the current parenting arrangement.  More specifically, the PRE found that the child's current environment "significantly impairs the child's emotional development." § 14-10-129(2)(d); *cf. Schlundt,* ¶¶ 41-45 (concluding that PRE did not support endangerment finding where it did not mention endangerment or significant impairment of emotional development).  The court adopted the PRE's findings.

¶ 18    There is record support for the district court's findings.  The PRE's written report and testimony indicated the following:

- Mother had difficulty coping with parenting responsibilities appropriately.  She deferred most of her parenting responsibilities and parenting time to maternal grandmother.  And even when mother was present, the child tended to seek out maternal grandmother for most of the child's needs, questions, and assistance.

- The child's inability to distinguish the parenting role between mother and maternal grandmother was a

concern.  The child exhibited confusion about who to turn to with questions or issues.

- Mother was "enmeshed with maternal grandmother, emotionally immature and unable to individuate and mature to a point where she [was] able to complete parenting tasks and responsibilities on her own."  That "enmeshment" created a "negative environment for [the child] endangering him emotionally."

- Mother's intent to remain in her parents' home indefinitely was "problematic" in light of maternal grandmother's "over involvement in parenting" the child.

- Mother had significant difficulty encouraging the child's relationship with father.  In particular, she restricted the child's interactions with father and his family and prevented the child from receiving gifts from father.

- Mother and her extended family had "participated in behaviors that [gave] [the child] the impression that [f]ather [was] bad, wrong, and exhibits poor judgment."  They spoke negatively about father while the child was in

earshot. And the PRE had concerns that the child had been "coached" on things to say to father.

- Although a positive relationship between the child and father was "imperative to [the child's] best interest," mother and her extended family did not value it. Without a change in environment, it would be impossible for the child to develop a positive relationship with father.

- The child was "acutely aware" of the parties' ongoing conflict. That conflict, combined with the "impressions and influence" from mother and her extended family, gave the child "a great deal of anxiety."

- The "negative influence and alienating behaviors that are present in mother's environment" were "detrimental to [the child's] personality development, his own self-concept and his emotional well-being."

¶ 19    In addition to the PRE report and testimony, father testified that mother's home was adversely impacting the child's personality. He said that during his parenting time, the child was disobedient and argumentative and would dismiss his authority in favor of

grandmother's. And he recalled numerous situations in which mother frustrated or disrupted his parenting time with the child.

¶ 20 Mother takes issue with the PRE's conclusions. She argues that none of the PRE's concerns — mother's inability to support the child's relationship with father, maternal grandmother's involvement in parenting the child, and the conflict between the parties — showed that the child's emotional development was significantly impaired. But as detailed above, the district court (by incorporating the PRE report) found otherwise. "What constitutes endangerment is a highly individualized determination." *In re Marriage of Wenciker*, 2022 COA 74, ¶ 26. Because the district court's findings are supported by the record, we will not disturb them. *See id.* And given the PRE's observations as to how the identified concerns were affecting the child, we cannot conclude that the district court's assessment of those facts was an abuse of discretion.

¶ 21 Mother points to evidence that could have supported the contrary finding, including that (1) the child was happy, well-adjusted, intellectually advanced, and bonded to both parents; and (2) the child had a stable home for two years in New Hampshire

where the child had built strong ties to family and friends. We agree that this evidence cuts in the other direction and could have supported a finding that the child's environment with mother did not significantly impair the child's emotional development.

¶ 22    But it is the district court's role, not ours, to resolve questions of conflicting evidence, including whether the child's emotional development is significantly impaired by the child's current environment. *See B.R.D.*, ¶ 15 ("[W]hen there is record support for the [district] court's findings, its resolution of conflicting evidence is binding on review."); *Wenciker*, ¶ 26. We may not reweigh the evidence and substitute our judgment for that of the district court. *See People in Interest of A.J.L.*, 243 P.3d 244, 249, 256 (Colo. 2010).

## 2.    Balancing of Harm

¶ 23    We also reject mother's contention that the district court did not consider the harm caused by the modification and weigh that harm against the advantages of the modification.

¶ 24    The district court explicitly acknowledged that the change of primary residential parent would be "difficult and stressful for the child." The PRE similarly recognized the "issues related to changing environments for a child this age." The court also noted that no

solution would be perfect, given the significant challenges faced by both parents in fostering a positive relationship with the other.

¶ 25 But the district court found — explicitly, insofar as it adopted the PRE — that "the harm likely to be caused by a change in the child's environment is outweighed by the advantage of a change to the child." In particular, the court found that the change to father as the primary residential parent "provides the best opportunity for the child to develop a healthy relationship with *both* parents and the best chance for lessening the stress placed on the child."

¶ 26 That finding had record support in the PRE's report and testimony, including the following:

- The child interacted appropriately with father, and they were well-bonded and happy together.

- Father was more respectful and encouraging of the child's relationship with mother than vice versa.

- Father was more willing to engage and reinforce with the child that he had two extended families and two homes.

- The child was safe in father's home, and the child should adjust well to life there.

¶ 27    Again, mother contends that the district court struck the wrong balance, and she asks us to reweigh the evidence, which we cannot do.  *See A.J.L.*, 243 P.3d at 256; *B.R.D.*, ¶ 15.  To the extent mother asserts that the district court ignored certain evidence that it did not refer to expressly — including mother's concerns about father's alcohol use, anger issues, and ability to be a stable majority-time parent as an active-duty service member — we may presume that the court considered all the evidence before it.  *See In re Marriage of Udis*, 780 P.2d 499, 504 (Colo. 1989).  Nothing requires the court to separately enumerate each potential harm.

### 3.    Child's Best Interests

¶ 28    Finally, we reject mother's claim that the district court erred by not considering certain statutory factors bearing on the child's best interests.  The PRE report expressly considered each of the pertinent factors set forth in section 14-10-124(1.5)(a), C.R.S. 2024.  The district court's adoption of that report indicates that the court appropriately considered the pertinent factors.  The court did not need to repeat each of those findings in its order or make specific findings on each statutory best interest factor.  *See In re Marriage of*

*Garst*, 955 P.2d 1056, 1058 (Colo. App. 1998); *see also In re Marriage of DePalma*, 176 P.3d 829, 834 (Colo. App. 2007).

## III. Appellate Attorney Fees

¶ 29      Mother requests an award of her appellate attorney fees under section 14-10-119, C.R.S. 2024, based on the parties' disparate financial resources. Because the district court is better situated to determine whether the parties' relative financial circumstances warrant such an award, we remand this issue to the district court for its consideration. *See* C.A.R. 39.1; *Schlundt*, ¶ 54.

¶ 30      We deny father's request for appellate attorney fees under section 13-17-102(4), C.R.S. 2024. Although mother has not prevailed, her arguments did not lack substantial justification. *See In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases when the appellant presents no rational argument, or the appeal is prosecuted for the purpose of harassment or delay."), *aff'd*, 2019 CO 81.

## IV. Disposition

¶ 31      The order is affirmed, and the case is remanded to the district court to consider mother's request for appellate attorney fees.

     JUDGE FOX and JUDGE JOHNSON concur.