In re the MARRIAGE OF Timothy D. GARST, Appellant,

and

Jessica Garst, n/k/a Jessica Godfrey, Appellee.

No. 97CA0712.

Colorado Court of Appeals, Div. IV.

March 19, 1998.

David Littman, P.C., David Littman, Denver, for Appellant.

John A. Wilson, P.C., John A. Wilson, Lakewood, for Appellee.

Opinion by Chief Judge HUME.

Timothy D. Garst (father) appeals from the order modifying joint custody and allowing Jessica Garst (mother) to remove the minor child from the state of Colorado. We affirm.

A decree of dissolution was entered in May 1996 after a hearing on permanent orders. The parties were granted joint custody of their then three-year-old child, with residential custody shifting between the parties on a weekly basis.

In November 1996, mother remarried. She moved to modify custody and to leave the state with the minor child to join her husband, who was in the military stationed in Arizona. She sought sole custody or, alternatively, that she be designated as primary residential custodian. Father opposed mother's requests.

After a hearing, the trial court continued the previously ordered joint custody and designated mother as the primary residential custodian. The court also entered broad parenting time orders, including that father be granted generous access to the child whenever he is physically present where the child resides, liberal and general telephone access, generous parenting time on long weekends and school vacations, and extensive summer visitation. It also designated a parenting-time coordinator and ordered the parties to contact him within 20 days in order to arrange a specific schedule.

## I.

Father first contends that the trial court failed to make specific findings to support its determination of custody and removal. Specifically, he argues that there were no findings made concerning the importance of continuity in the child's life or the advantages and disadvantages of the proposed move. We disagree.

The trial court must include in its order findings of fact and conclusions of law to enable the appellate court to understand the basis of its order. *See In re Marriage of Parker,* 886 P.2d 312 (Colo.App.1994). Factual findings are sufficient if they identify the evidence which the fact finder deemed persuasive and determinative of the issues raised. *Regional Transportation District v. Jackson,* 805 P.2d 1190 (Colo.App.1991).

It is not necessary that a trial court make specific findings on each and every factor included in the statute, but there must be some indication in the record that the trial court considered such of those factors as were pertinent. *In re Marriage of Jaramillo,* 37 Colo.App. 171, 543 P.2d 1281 (1975).

Here, the trial court adopted the transcript of its bench comments as the final order. In its ruling, the court made the following findings that were pivotal to resolution of mother's removal request: (1) mother was the primary caretaker of the minor child before the parties' separation; (2) there would be a major disruption if mother were to continue to live in this state with the minor child and her new baby while her husband lived in Arizona; and (3) the child had important relationships with members of husband's family, including a sibling.

The trial court also specifically adopted the observations, conclusions, and concerns expressed by the custody evaluator concerning the mental health and parental skills of

father that supported its conclusion. That evaluator ultimately opined that both parents had deficits as well as many positive parental qualities, that the child was not endangered in either parent's care; and that the child's best interests would be served by being primarily in his mother's care. He also concluded that the child would find more simplicity, stability, and clarity by being primarily based with his mother.

We recognize that the court could have made more specific findings regarding the observations, conclusions, and concerns that were expressed by the custody evaluator regarding mother's mental health and parenting skills. Nevertheless, the findings and reference to the custody evaluation demonstrate that the trial court considered the statutory factors set forth in § 14–10–124(1.5), C.R.S.1997, particularly the interaction and interrelationship of the child with others and the mental health of the individuals involved, and that it was persuaded that the best interests of the child would be met by naming mother as the primary residential custodian. In addition, the finding that the harm likely to be caused by the change of environment was outweighed by the advantage to the child is based upon the evaluator's opinion and is implicit in the court's conclusion.

Furthermore, the court's finding that mother was the primary caretaker of the child prior to the parties' separation is supported by the record, and, in addition, the court's other findings are sufficient to support its exercise of discretion concerning the removal question. Finally, the court's express reliance upon the analysis of the custody evaluator sufficiently establishes the basis for its determination of the removal issue.

## II.

Father also contends that the trial court applied the wrong standard for determining mother's motion for removal. We disagree.

In cases in which the parent with sole residential custody wishes to move out of Colorado with the child, the custodial parent must present a *prima facie* case showing that there is a sensible reason for the move and, once that showing has been made, a presumption allowing the child to remain with the custodial parent arises and the burden shifts to the non-custodial parent to show that the move is not in the best interests of the child. *In re Marriage of Francis*, 919 P.2d 776 (Colo.1996).

Although *Francis* concerned removal in the context of a sole custodial situation, nevertheless, the court there ruled that, because of the importance of a child's continuing stability in his or her relationship with the residential custodian, the endangerment standard of § 14–10–131, C.R.S.1997, should be taken into account "in any removal decision." *In re Marriage of Francis, supra*, 919 P.2d at 783 (emphasis added). The rationale behind this rule is that the residential custody of the child is explicitly or implicitly at issue whenever one parent requests to relocate with the children.

We initially conclude, therefore, that the endangerment standard applies when removal is sought by a party who shares joint legal custody. There, as in the sole custody situation, the removal dispute inherently involves modification of residential custody.

However, the court in *Francis* specifically stated that the presumption in favor of the residential custodian is necessarily weakened to the extent that parents share both residential and legal custody, and it declined to resolve the issue of how removal should be evaluated in a circumstance in which both parents truly share residential custody. That is the issue presented here.

Father argues that *In re Marriage of Chester*, 907 P.2d 726 (Colo.App.1995) is the standard more applicable to removal when the parties share joint custody. We agree in part.

In the *Chester* holding, announced about one year before *Francis*, a division of this court determined that the burden in resolving the issue of removal in joint custody cases must be allocated equally between the parties and that the considerations required by *In re Marriage of Murphy*, 834 P.2d 1287 (Colo.App.1992) apply.

The court in *Francis* did not mention the *Chester* case. Both cases, however, delineate six criteria established in *Murphy* that are relevant and that must be weighed in determining whether removal is in a child's best interests. Nevertheless, we recognize that *Chester* was limited by *Francis* to the extent it conflicts with the rule established in that case that the endangerment standard applies whenever removal results in a change in primary residential custody.

■ We also conclude, however, that *Chester* can be construed consistently with *Francis* by restricting its application to those cases in which the parties have shared residential custody of a child. Accordingly, we hold that, in those cases, the parties share the burden of presenting evidence and persuading the court as to whether the best interests of the child would be furthered or impaired by removal.

■ In such a case, in contrast to the situation considered in *Francis,* determination of the best interests of the child in the context of the removal issue is indistinguishable from the context of an award of original custody, at which time the parties at least theoretically shared the physical and legal care of the child in an intact family. Thus, the best interests standard should apply to those removal cases in which the parties share physical residential custody, as it does when the court is initially determining custody. *Cf. In re Marriage of Dickman*, 670 P.2d 20 (Colo.App.1983)(endangerment standard for modification not applicable when the parties share custody of the child and there are two "present environments"); *In re Marriage of Lawson*, 44 Colo.App. 105, 608 P.2d 378 (1980) (best interests standard applied when father, who had temporary physical custody, moved for permanent custody).

Adoption of the best interests standard for removal cases when the parties share residential custody of a child recognizes the legislative intent expressed in § 14–10–131.5(1), C.R.S.1997, which provides generally for the modification of joint custody based upon the best interests of the child, as specified in § 14–10–124(1.5), and when the harm likely to be caused by the change of environment is outweighed by the advantage of such change to the child.

Here, the trial court applied the best interests standard to mother's request for removal, as well as entering additional findings concerning the issue of endangerment. Because the parties had been granted equal residential care of the child after the permanent orders hearing, we conclude that the proper standards were applied.

### III.

■ Father next asserts that the trial court erred by failing either to design its own plan or to require the parties to submit a joint custody plan. We disagree.

Section 14–10–123.5(3), C.R.S.1997, provides that, in order to implement joint custody, both parties may submit a plan for the court's approval or the court shall formulate a plan which addresses the parties' arrangements for various factors affecting the physical and emotional well-being of the child. Section 14–10–123.5(4), C.R.S.1997, allows the court to order mediation to assist the parties in formulating, modifying, or implementing a plan and to allocate the costs of such mediation between the parties.

Here, neither party submitted a plan for implementation of the joint custody that had been previously ordered. As part of the order granting mother's request to remove the minor child, however, the trial court ordered the parties to contact a parenting-time coordinator, who was a mental health professional, in order to facilitate and improve the parties' communication in the exercise of joint custody and to establish father's parenting time, given mother's move out of state. Hence, we conclude that the trial court complied with the spirit and purpose of § 14–10–123.5(4).

### IV.

■ Father finally asserts that the manifest weight of the evidence establishes that the child's best interests would be met by

denying the motion to remove the child from the state of Colorado. We disagree.

The determination of the credibility of witnesses and the weight, probative force and sufficiency of the evidence, and the inferences and conclusions to be drawn therefrom are matters within the sole discretion of the trial court. *In re Marriage of Elmer*, 936 P.2d 617 (Colo.App.1997).

Here, we have reviewed the record and are satisfied that the evidence, albeit conflicting, supports the trial court's determination.

Order affirmed.

NEY and RULAND, JJ., concur.