In re the MARRIAGE OF Leslie A. FICKLING, Appellee,

and

Nicholas T. Fickling, Appellant.

No. 03CA1644.

Colorado Court of Appeals, Div. III.

Aug. 26, 2004.

Elaine G. Edinburg, P.C., Elaine G. Edinburg, Edwards, Colorado, for Appellee.

Goodman and Wallace, L.L.P., Kerry H. Wallace, Kristin McKnight, Edwards, Colorado, for Appellant.

Opinion by Judge GRAHAM.

In this dissolution of marriage proceeding, Nicholas T. Fickling (father) appeals from the trial court's permanent orders that substantially reduced his parenting time from the amount awarded in a stipulation and temporary orders. We affirm.

Father and Leslie A. Fickling (mother) were married in 1988 and are the parents of one child. A petition for the dissolution of the parties' marriage was filed in October 2001.

In December 2001, the parties entered into a stipulation for the temporary allocation of parenting time, and it was approved by the court. The stipulation provided that the child would move from one parent's residence to the other on a weekly basis, with additional provisions for vacations and other special occasions.

In September 2002, mother moved for the appointment of a special advocate to assist the parties in developing a permanent parenting plan. As one of the grounds for this motion, mother stated that she no longer believed that the existing parenting plan was in the child's best interests. A special advocate was appointed. In February 2003, the special advocate submitted her initial report, recommending that the existing parenting schedule be continued. On March 6, 2003, she submitted an addendum, recommending a completely different schedule. She advised the court that upon learning of her original recommendations, the child had expressed dissatisfaction with them and had suggested that she could do better in school if she could reside primarily with her mother during the school year. After further discussions with the child, the special advocate recommended that the child spend weekdays with mother and most weekends with father during the school year, with the schedule reversed during the summer.

On March 10, 2003, the special advocate further revised her report, recommending that the child return to mother's residence on Sunday evenings during the school year, rather than remaining with her father until Monday morning. The result of the suggested changes was a reduction in father's par-

enting time from 182 overnights per year to 100.

In April 2003, the court entered permanent orders that essentially adopted the special advocate's recommendations, granting mother parenting time during the school week and granting father parenting time three of four weekends per month during the school year, with the schedule to be reversed during the summer months. Acknowledging that father's parenting time under the new schedule would be "eroded" compared to the status quo, the court also awarded father parenting time during the child's spring vacation every year.

## I.

■ Father first contends that the trial court erred as a matter of law by applying the best interests of the child standard in substantially reducing his parenting time instead of the endangerment standard set forth in § 14–10–129(1)(b)(I), C.R.S.2003. We disagree.

Whether the court has applied the correct legal standard in making its findings is a question of law that we review de novo. *People in Interest of J.R.T.*, 55 P.3d 217 (Colo.App.2002), *aff'd*, 70 P.3d 474 (Colo. 2003).

In allocating parental responsibilities, including parenting time, the court is required to apply the best interests of the child standard, giving "paramount consideration to the physical, mental, and emotional conditions and needs of the child." Section 14–10–124(1.5), C.R.S.2003.

However, a parent's "parenting time rights" cannot be "restricted" unless the court finds that the parenting time "would endanger the child's physical health or significantly impair the child's emotional development." Section 14–10–129(1)(b)(I). The statute specifically gives the trial court authority to modify "an order granting or denying parenting time rights." Section 14–10–129(1)(a)(I), C.R.S.2003.

The term "parenting time rights" is not defined. This term introduces the concept of "rights," which is not present in the provisions that allow the trial court to allocate parenting time. The distinction is an important one because we are called upon to determine whether the modification of temporary orders granting parenting time is subject to the higher endangerment standard imposed by § 14–10–129(1)(b)(I). Father thus contends that if the trial court's permanent orders substantially reduce the amount of parenting time originally specified in the temporary orders, the permanent orders are subject to the endangerment standard, not the best interests of the child standard. We are not persuaded.

In construing the standard set forth in § 14–10–129(1)(b)(I), we must ascertain and effectuate the underlying legislative intent from the plain and ordinary meaning of the statutory language. *See People v. Longoria*, 862 P.2d 266 (Colo.1993). Constructions that defeat the obvious legislative intent should be avoided so as to give consistent and sensible effect to all parts of a statutory scheme. *People v. Dist. Court*, 713 P.2d 918 (Colo. 1986). We decline to follow a statutory construction that leads to an unreasonable or absurd result. *People v. Woellhaf*, 87 P.3d 142 (Colo.App.2003)(*cert. granted* Mar. 22, 2004). Each word in a statute should be considered in the interpretation. *City of Florence v. Bd. of Waterworks*, 793 P.2d 148 (Colo.1990).

■ The General Assembly has declared that it is in the best interest of all parties to encourage frequent and continuing parenting time between each parent and the minor children of the marriage after separation or dissolution. Section 14–10–124(1), C.R.S. 2003. The court's discretion with respect to allocation of parenting time must be exercised consistently with this policy. *In re Marriage of Velasquez*, 773 P.2d 635 (Colo. App.1989).

Parties frequently allocate parenting time pursuant to a stipulated separation agreement. *See* § 14–10–112(1), C.R.S.2003. Such an agreement is not binding on the court. Section 14–10–112(2), C.R.S.2003. However, the court may enter a temporary order allocating temporary parental responsibilities, including temporary parenting time

and temporary decision-making responsibility. Section 14–10–125, C.R.S.2003.

Temporary orders regarding parenting time and decision-making responsibility are intended to determine those matters pending final orders. Temporary orders are not determinative of the permanent orders regarding allocation of parental responsibility or other matters. *In re Marriage of Lawson,* 44 Colo.App. 105, 608 P.2d 378 (1980)(an agreement for temporary custody is not res judicata as to the permanent order for custody).

We conclude that temporary orders do not grant "parenting time rights" as that term is specified in § 14–10–129(1)(b)(I), but simply provide for parenting time pending a final determination at permanent orders. While temporary orders are enforceable, we do not view them in the same way we view permanent orders, which establish rights in connection with the decree of dissolution that stay in effect until one party establishes a change in circumstances. We do not address whether parenting time could be restricted in temporary orders, such as by supervised visitation. *See In re Marriage of West,* 94 P.3d 1248 (Colo.App.2004).

■ Only permanent orders grant "parenting time rights." Therefore, the question whether a restriction has occurred in parenting time need be answered only when permanent, not temporary, orders are modified. To hold otherwise would undermine the role that stipulations and temporary orders play in family law.

Our review of the Uniform Dissolution of Marriage Act (UDMA) confirms this analysis. The UDMA encourages trial courts to issue temporary orders without a formal hearing whenever possible, to avoid trauma for the parties and the child. *See* UDMA § 403 official comment. Cases from other UDMA jurisdictions consistently demonstrate that because temporary orders are intended to result from an abbreviated proceeding, not a full hearing on the merits, the trial court is not obligated to give substantial weight to the temporary orders when determining the permanent orders. *See, e.g., Horton v. Horton,* 961 S.W.2d 67 (Mo.Ct. App.1997)(in determining custody following

dissolution, there is no presumption in favor of the parent who had physical custody of the child during separation); *In re Marriage of Kovash,* 260 Mont. 44, 858 P.2d 351 (1993)(court was not required to find change in circumstances before modifying temporary custody order in dissolution proceeding and entering final custody order that differed from temporary order).

> "Temporary child custody is merely an initial determination made to ascertain which of [the] parents will keep [the] children until such time as [a] full hearing on custody can be [held]." ... If changed circumstances are required to be proven before modifying temporary custody orders, parents would be forced to litigate temporary custody. This result would be contrary to the purpose of the statute.

*In re Marriage of Kovash, supra,* 858 P.2d at 355 (quoting *In re Marriage of Allen,* 237 Mont. 64, 771 P.2d 578, 580 (1989)).

A division of this court has recognized that temporary orders are indeed only temporary when it determined that "a temporary order is not 'in any way res judicata' as to the permanent order." *In re Marriage of Lawson, supra* 44 Colo.App. at 107, 608 P.2d at 380; *see In re Marriage of West, supra,* (applying the endangerment standard to the modification of parenting time after permanent orders and using the permanent orders as the baseline for considering whether a restriction occurred).

We therefore conclude that the trial court did not err in applying the best interests of the child standard in establishing the parties' parenting time rights in the permanent orders.

## II.

■ Father next contends that the trial court abused its discretion by unduly limiting and restricting his parenting time without proper consideration and balancing of the factors set forth in § 14–10–124(1.5). We disagree.

The determination of parenting time is a matter within the sound discretion of the trial court, taking into consideration the

child's best interests and the policy of maintaining the child's relationship with both parents. *In re Marriage of England,* 997 P.2d 1288 (Colo.App.1999).

Factors to be considered by the court in determining parenting time pursuant to § 14–10–124(1.5)(a), C.R.S.2003, include the wishes of the child's parents and the child; the interaction of the child with her parents; the child's adjustment to home, school, and community; the physical proximity of the parties to each other; and the ability of each party to place the needs of the child ahead of his or her own needs. Although specific findings as to each factor need not be made, the findings must be sufficient to allow a reviewing court to determine that the decision is supported by competent evidence. *In re Marriage of Finer,* 920 P.2d 325 (Colo. App.1996).

Before making its determination in this matter, the trial court heard testimony from the parties, the special advocate, several of the child's teachers, the child's doctor, members of the child's extended family, and others.

These witnesses addressed the factors set forth in § 14–10–124(1.5)(a). Evidence presented to the court included the special advocate's reports and several of the child's school reports. The child's school reports revealed a decline in her grades when the stipulated parenting plan had been in place, and the child told the special advocate that she thought she could do better in school if she spent the school week with her mother.

The court was advised of the child's preference for a different schedule, the alternative parenting schedules considered by the parties, and the special advocate's reasons for her recommendations.

The court acknowledged that it had "heard and read voluminous evidence" and stated that it had "considered all of the statutory factors" in reaching its decision. The court noted that the child herself had indicated that "it would be better for her academic career" if she spent school nights with her mother. The court then adopted the plan recommended by the special advocate.

In applying the best interests of the child standard, the court properly considered and applied the factors set forth in § 14–10–124(1.5)(a), and we will not disturb its findings.

Judgment affirmed.

Judge TAUBMAN and Judge DAILEY concur.