24CA1874 Marriage of Al Flahi 11-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1874
Elbert County District Court No. 22DR30027
Honorable Theresa Slade, Judge

---

In re the Marriage of

Kasarah Marie Al Flahi n/k/a Kasarah Marie Drake,

Appellant,

and

Tristan Ahmed Busanda Al Flahi,

Appellee.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division A
Opinion by CHIEF JUDGE ROMÁN
Martinez* and Hawthorne*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 20, 2025

---

Paige Mackey Murray, LLC, Paige Mackey Murray, Boulder, Colorado, for
Appellant

Grimaldi and Kinde, PLCC, Laura Kinde, Mark Grimaldi, Nicholas Trevino,
Lauren B. Dutcheshen, Denver, Colorado, for Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Kasarah Marie Al Flahi, now known as Kasarah Marie Drake (mother), appeals the district court's allocation of parenting time entered in connection with the dissolution of her marriage with Tristan Ahmed Busanda Al Flahi (father).  We affirm the judgment and remand the case to the district court for further proceedings on mother's request for section 14-10-119, C.R.S. 2025, attorney fees.

## I.     Relevant Facts

¶ 2     Shortly after initiating this case, mother filed a "motion to relocate" to Minnesota with the parties' child.  She explained that (1) before the child was born, the parties lived in Minnesota; (2) her and father's extended families lived in Minnesota; (3) the cost of living was lower in Minnesota; and (4) she could quickly obtain a new job after moving.

¶ 3     In November 2022, the district court conducted a hearing on mother's motion.  The court found that mother and father were "wonderful parents," they each had their own strengths when caring for the child, and neither Colorado nor Minnesota was a superior location for the child.  The court then said that it wanted to "kick this back to [the parents] . . . to try to figure this out" because it believed they could come to a joint decision that was in the child's

best interests. The court clarified that it was "not asking [them] to develop . . . a permanent parenting plan. [And] if [they could] file . . . even an interim [a]greement," that would be "great."

¶ 4 A few weeks later, the parties informed the court that they were "unable to agree on whether [the child] should be allowed to relocate and ultimately who would become the primary residential parent based on whether [the child]'s relocation is allowed or not." Although they could not agree on whether the child would reside primarily with mother in Minnesota or with father in Colorado, they did agree to a general parenting time schedule. Under their parenting plan, the child would reside with the "parent to whom [the court] allocated primary residential parental responsibilities" during the school year and visit the "non-primary residential parent" one weekend per month. Then, during the summer, the child would reside with the "non-primary residential parent" and visit the primary residential parent one weekend per month. The non-primary residential parent would also exercise parenting time during fall, spring, and winter breaks.

¶ 5 The court authorized the parties to set "a final hearing on the relocation" and described it as "a temporary orders hearing." In

response, in an uncontested motion, mother informed the court that the parties agreed "that no further litigation on the issue of temporary relocation [was] necessary, and request[ed] . . . a definitive order." She also informed the court that "[t]he parties were under the impression at the end of the hearing . . . that evidence had closed on the contested matter of the relocation."

¶ 6    In a December 2022 order, the court said it had "considered all of the factors set forth in [section] 14-10-124," C.R.S. 2025, and determined that the child could move to Minnesota with mother. The court explained that the child had spent more time with mother and that many extended family members lived in Minnesota. The court adopted the parties' parenting time plan and designated mother as the "parent to whom [the court] allocated primary residential parental responsibilities." Mother and the child then moved to Minnesota.

¶ 7    The dissolution case was later assigned to a new judge, who presided over the September 2023 permanent orders hearing. At that hearing, the parties asked the court to make changes to the parenting time plan set forth in the December 2022 order. After mother's testimony and father's direct examination, neither of

which included evidence pertaining to changing the location of the child, the court said, "There seems to be an understanding or stipulation that [the December 2022] temporary orders were permanent." Then, the court asked whether the parties believed the December 2022 order was a permanent or temporary order on the allocation of parenting time. The parties agreed that the determination on the child's move to Minnesota was permanent. Father's lawyer specifically said that the "order on relocation was permanent. We are not contesting the relocation." She added that "there are aspects of the parenting plan that the parties came up [with] together and [the court] adopted as an order of the [c]ourt that we do believe are at issue and are ripe for the [c]ourt to decide, but not the matter of relocation." The court indicated that the permanency of the order could not be separated in that manner, and it directed the parties to further discuss the issue.

¶ 8    At a status conference a few days later, the parties changed their positions. Mother said that all aspects of the December 2022 order were permanent. Father said that the order was temporary.

¶ 9    After reviewing the record and the oral findings at the November 2022 hearing, the court concluded that the December

2022 order was a temporary order on the allocation of parenting time.

¶ 10    In light of that determination, the court held a new permanent orders hearing. Then, in a September 2024 order, the court determined that it was in the child's best interests to reside in Colorado with father, and it allocated to him primary parenting time. Mother appealed, and the motions divisions of this court stayed the district court judgment.

## II.    Standard of Review

¶ 11    The district court has broad discretion over the allocation of parenting time. *In re Marriage of Collins*, 2023 COA 116M, ¶ 8. We will not disturb a court's parenting time ruling absent a showing that the court abused its discretion, meaning that it misapplied the law or acted in a manifestly arbitrary, unreasonable, or unfair manner. *Id.* When reviewing the court's ruling, we exercise every presumption in favor of upholding it and will affirm the decision when the record supports it. *Id.*

## III.    December 2022 Order

¶ 12    Mother contends that the district court's September 2024 allocation of parenting time must be reversed. She argues that the

court erred by determining that the December 2022 order was a temporary decision on parenting time. She further argues that because the December 2022 order was a permanent determination on the allocation of parenting time, the court's September 2024 ruling that changed that allocation required the court to apply the endangerment standard before modifying parenting time, which it did not do. We conclude that the court did not abuse its discretion when it determined that the December 2022 order was a temporary ruling on parenting time, and, as a result, the court correctly applied the best interests standard when determining a permanent allocation of parenting time in the September 2024 order.

### A. Applicable Legal Standards

¶ 13 A temporary order on parental responsibilities sets forth an initial determination on the division of parenting time and decision-making responsibility until the court renders its permanent orders. *In Interest of C.T.G.*, 179 P.3d 213, 221 (Colo. App. 2007); *In re Marriage of Fickling*, 100 P.3d 571, 574 (Colo. App. 2004); *see* § 14-10-108(1), C.R.S. 2025. A court's temporary order does not vest a parent with parenting time rights, and it is not determinative when the court decides the permanent allocation of parenting time.

6

*See* § 14-10-108(5)(a), (c); *Spahmer v. Gullette*, 113 P.3d 158, 163 (Colo. 2005); *C.T.G.*, 179 P.3d at 221; *Fickling*, 100 P.3d at 574.

¶ 14     A permanent order on parental responsibilities grants a parent vested parenting time rights based on the court's consideration of the child's best interests. *C.T.G.*, 179 P.3d at 221; *see* § 14-10-124(1.5)(a). As applicable here, a court may not modify a permanent allocation of parenting time when doing so changes the parent with whom the child primarily resides unless the court finds that (1) since issuing the permanent order, there has been a change in circumstances and (2) the child's present environment endangers the child's physical health or significantly impairs the child's emotional development. § 14-10-129(2)(d), C.R.S. 2025.

¶ 15     We review de novo the interpretation of a district court's order. *See Andrews v. Miller*, 2019 COA 185, ¶ 8. "Whether an order for allocation of parental responsibilit[ies] . . . is temporary or final is determined from the substance and effect of the order." *C.T.G.*, 179 P.3d at 221. We therefore look at the plain language in the order and, when unambiguous, construe the order in harmony with the generally accepted meaning of the words used. *See Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373, 376 (Colo. 2000); *see also*

*Blecker v. Kofoed*, 672 P.2d 526, 528 (Colo. 1983) (stating that an appellate court interprets an order to effectuate the district court's intent by applying the same rules of construction as when an appellate court interprets a statute or contract).

¶ 16　　But when the order is ambiguous, meaning that it is susceptible to more than one reasonable interpretation, we review the record and the circumstances surrounding the order to determine the court's intent. *Blecker*, 672 P.2d at 528; *see Ad. Two*, 9 P.3d at 376-77. The district court's interpretation of an ambiguous order becomes an issue of fact, and we defer to the court's factual determination when the record supports it. *See Sch. Dist. No. 1 v. Denver Classroom Tchrs. Ass'n.*, 2019 CO 5, ¶ 14; *Union Rural Elec. Ass'n v. Pub. Utils. Comm'n*, 661 P.2d 247, 251 n.5 (Colo. 1983) ("Once a contract is determined to be ambiguous, the meaning of its terms is generally an issue of fact to be determined in the same manner as other disputed factual issues. Therefore, if the present contract were ambiguous, any factual findings . . . on the intent of the parties should be given deference on appeal under the review standard for factual findings.") (citation omitted).

## B. Discussion

¶ 17    Reviewing the plain language of the December 2022 order, we cannot conclude that the order was unambiguously a permanent or temporary allocation of parenting time.  On one hand, the order referred to the factors in section 14-10-124, allowed the child to move to Minnesota with mother, and directed a division of parenting time based on the child's out-of-state move, which taken together could support a permanent ruling.  On the other hand, the parenting plan adopted by the court expressly stated that the cost for the child to travel for parenting time was "divided equally between the parties on a temporary basis, subject to reallocation at [p]ermanent [o]rders."  In addition, neither the December 2022 order nor the parenting time plan expressly indicated whether the ruling was a final decision on the allocation of parenting time or merely an interim decision until the court could conduct a permanent orders hearing.

¶ 18    In light of the order's ambiguity, we next consider the circumstances leading up to the December 2022 order and the court's resolution of those facts when determining that the order was intended to be a temporary decision on parenting time.  *See*

9

*Blecker*, 672 P.2d at 528; *cf. Hefley Ranch, Inc. v. Stewart*, 764 P.2d 415, 416 (Colo. App. 1988) ("The interpretation of a contract requires the court to ascertain the parties' intent at the time the document was executed . . . ."). The record reveals that the court and the parties were not consistent in their statements about whether the decision was a temporary or permanent order. We, therefore, defer to the court's determination, supported by the record, that the December 2022 order was temporary. *See Sch. Dist. No. 1*, ¶ 14; *Union Rural Elec.*, 661 P.2d at 251 n.5.

¶ 19　　To begin, the court's minute order described the November 2022 hearing, during which the parties focused on mother's "motion to relocate," as "a temporary orders hearing." Then, at that hearing, mother acknowledged that she was asking for an "interim recommendation" on parenting time "until permanent orders" were entered. Mother also confirmed that, in connection with the child's move to Minnesota, she was asking the court to allocate to her sole decision-making responsibility on a "temporary" basis and that this allocation was subject to "reexamination at permanent orders." The court concluded the hearing by instructing the parties to discuss a

possible joint resolution but clarified that it was "not asking [them] to develop . . . a permanent parenting plan."

¶ 20 Following the November 2022 hearing, the court and mother made additional comments indicating that the December 2022 order was intended to be a temporary allocation of parenting time. After the court received the parties' partial agreement on the parenting plan, the court invited them to set a final hearing on the child's relocation, which it described as "a temporary orders hearing." Mother responded to that invitation by telling the court that the parties did not desire another hearing "on the issue of temporary relocation" and asked the court to rule on her motion. And even after the December 2022 order, mother's attorney referred to the November 2022 hearing as a "temporary relocation hearing" and the parenting plan as a "temporary agreement."

¶ 21 Still, mother highlights that, at the September 2023 hearing, the parties agreed that the December 2022 order as a permanent decision on the child's "relocation." However, at the same hearing, the parties asserted that the allocation of parenting time was not permanent. The court considered these opposing positions as well as all the other circumstances surrounding the order, and it

11

determined that the December 2022 order was not permanent. We will not disturb the district court's resolution of the conflicting evidence when determining the intent of the December 2022 order. *See Sch. Dist. No. 1*, ¶ 14; *Union Rural Elec.*, 661 P.2d at 251 n.5; *cf. In re Marriage of Evans*, 2021 COA 141, ¶ 45 ("We are not at liberty to re-evaluate the conflicting evidence and set aside findings supported by the record.").

¶ 22　　Moreover, a court's ruling that allows a child to move out-of-state with a parent is not a determination independent of the allocation of parenting time; although it is intertwined with the court's allocation, nothing dictates that it must be decided at the same time as the allocation of parenting time. *See* § 14-10-124(1.5)(a)(VIII); *see also* § 14-10-106(1)(b), C.R.S. 2025 (requiring a court to allocate parenting time for any marital children when dissolving a marriage); § 14-10-129(2)(c) (discussing a post-permanent orders request to relocate with a child as a modification of the court's parenting time allocation); *Spahmer*, 113 P.3d at 161-64 (describing a parent's request to relocate with a child as a determination concerning the allocation of parenting time). Thus, until the court resolves the allocation of parenting time, it can

12

change its determination on where a child lives. *See Collins*, ¶ 79 (recognizing that the court may revise any order or judgment at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties). *But see In re Estate of Walter*, 97 P.3d 188, 191 (Colo. App. 2003) (noting that a second judge may modify a prior ruling if new facts, changes of law, or other persuasive circumstances warrant such modification).

¶ 23    Mother also argues that the district court improperly relied on the absence of findings in the December 2022 order concerning the section 14-10-129(2)(c) relocation factors to support its determination that the order was temporary. True, a court does not need to consider the section 14-10-129(2)(c) relocation factors when determining an initial allocation of parenting time. *See Spahmer*, 113 P.3d at 163-64. But the court did not ultimately rely on the absence of those findings to determine that the December 2022 order was a temporary ruling on the allocation of parenting time. The court merely noted the lack of those findings when discussing its concerns about the order. We therefore are not persuaded that the district court abused its discretion by determining that the

December 2022 order was a temporary decision on the allocation of parenting time.

¶ 24    Given our conclusion, we necessarily reject mother's related contention that the district court erred by not applying the endangerment standard set forth in section 14-10-129(2)(d) when it modified the purported permanent allocation of parenting time set forth in the December 2022 order. The district court decided that the December 2022 order was temporary, and, when issuing the September 2024 order, the court then rendered a permanent determination on the allocation of parenting time based on the child's best interests. *See* § 14-10-124(1.5)(a); *Spahmer*, 113 P.3d at 163-64; *Fickling*, 100 P.3d at 574.

IV.    Allocation of Parenting Time

¶ 25    Mother next contends that even if the December 2022 order was temporary, the district court abused its discretion by allocating parenting time primarily to father in Colorado in its permanent orders. We disagree.

¶ 26    The district court thoroughly considered the child's present circumstances and the statutory best interests factors, and it found that it was in the child's best interests to reside in Colorado and

allocated primary parenting time to father. *See* § 14-10-124(1.5)(a). The court explained that, as a whole, mother and father were good parents and that each could support the child. Then, the court found that "none of the reasons" the court relied on in 2022 to allow the child to temporarily relocate to Minnesota had "materialized," "arguably things [had] worsened" since the child had moved, and the child was "not in a better position as a result of the move out of Colorado." The court found that the primary reason the court allowed the child to move to Minnesota in 2022 was due to the increased connection the child could have with his extended family in Minnesota. But it was troubled by mother's failure to facilitate any visits for the child with father's extended family and her belief that she did not bear any burden to arrange those visits. The court also found that mother had recently moved to a new home in Minnesota, which "forced" the child to change schools, and that she did not discuss changing the school with father, even though they shared joint decision-making responsibility. The court further found that, since moving to Minnesota, mother was not involving father in decisions concerning the child, she "seemed offended" that

she would have to consult with father on decisions, and their ability to make joint decisions concerning the child had deteriorated.

¶ 27    Mother argues that the court's findings did not sufficiently justify an allocation of parenting time that directed the child to move back to Colorado after spending the last two years in Minnesota. However, the court weighed the conflicting evidence and considered all the statutory best interests factors, including the child's presence in Minnesota, before it concluded that the child's best interests would be served by moving back to Colorado with father.

¶ 28    The record supports the court's determination, and we therefore will not disturb it. *See Collins*, ¶ 8. In particular, father testified that (1) before moving to Minnesota, the child had "lived his whole life" in Colorado; (2) moving to Minnesota had adversely impacted the child; and (3) living in Colorado was in the child's best interests. Father further explained that, since the parties' separation in 2022, mother had changed the child's school three to four times, which included schools in Minnesota and Colorado, and that mother was not involving him in decisions concerning the child, including the child's medical care and school. Mother also

admitted that she had changed the child's school in Minnesota, she had not discussed this change with father, the child had not seen father's extended family in Minnesota, and she had earned a lower income in Minnesota.

¶ 29    While mother believes that the court should have placed more weight on the child's time in Minnesota, the court properly determined a permanent allocation of parenting time based on the child's best interests. *See* § 14-10-124(1.5)(a). The court was not obligated to place more weight on the December 2022 order's decision for where the child would temporarily live. *See* § 14-10-108(5)(a) ("A temporary order . . . [d]oes not prejudice the rights of the parties or the child which are to be adjudicated at subsequent hearings in the proceeding."). We will not reweigh the conflicting evidence or set aside the court's allocation of parenting time when, as here, the record supports it. *See Collins*, ¶ 8; *see also In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (noting that credibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn from the evidence, are matters within the district court's sole discretion).

¶ 30     Mother also challenges a few discrete findings by the district court that, according to her, lacked record support. Specifically, she asserts that the court improperly found that she moved "several times," when, in fact, she had only moved once since going to Minnesota. She asserts that the court incorrectly found that she expected to get a better paying job in Minnesota, when she never made that claim in her "motion to relocate." And she asserts that the court incorrectly found that she "promise[d]" to maintain the child's connection to father's family, when she only indicated that she would try to do so. Even if we assume, without deciding, that these few findings mischaracterized the evidence, as we explained above, the record supports the court's many other findings in support of its overarching determination that it was in the child's best interests to allocate primary parenting time to father in Colorado. *See Collins*, ¶ 8. And mother does not show that any error by the court concerning the few findings she highlights "substantially influenced the outcome of the case or impaired the basic fairness of the trial." *In re Parental Responsibilities Concerning E.E.L-T.*, 2024 COA 12, ¶ 30; *see also* C.A.R. 35(c) (directing the court to disregard any error that does not affect the

18

parties' substantial rights); *People in Interest of A.C.*, 170 P.3d 844, 845 (Colo. App. 2007) (concluding that an alleged error, without a valid allegation of prejudice, is not grounds for reversal).

¶ 31     The court thus acted within its broad discretion to allocate parenting time primarily to father in Colorado.

## V.     Appellate Attorney Fees

¶ 32     Mother requests her appellate attorney fees under section 14-10-119 based on the purported disparity in the parties' financial resources.  The district court is better equipped to address the factual issues associated with this request, and we therefore remand this issue to the district court.  *See* C.A.R. 39.1; *Collins*, ¶ 86.

¶ 33     Father requests an award of appellate attorney fees under C.A.R. 38(b), arguing that mother's appeal is frivolous.  Even though unsuccessful, we do not agree that mother's appeal warrants such an award.  *See Glover v. Serratoga Falls LLC*, 2021 CO 77, ¶ 70 (noting that we award such attorney fees only in clear and unequivocal cases of egregious conduct where no rational argument is presented).

¶ 34     Father also seeks attorney fees under C.A.R. 39. But C.A.R. 39 does not authorize an award of attorney fees; it addresses costs. However, costs are taxed in accordance with C.A.R. 39(a)(2).

## VI.   Disposition

¶ 35     We affirm the judgment. The case is remanded to the district court to consider mother's request for appellate attorney fees under section 14-10-119.

¶ 36     Additionally, on November 18, 2024, a motions division of this court entered an order granting mother's motion to stay the district court's September 2024 order. Upon issuance of the mandate, the stay is lifted.

JUSTICE MARTINEZ and JUDGE HAWTHORNE concur.