25CA0372 Marriage of Maggard 01-22-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0372
Washington County District Court No. 24DR4
Honorable Matthew W.E. Bradley, Magistrate

---

In re the Marriage of

Brock Maggard,

Appellee,

and

Cheyenne Maggard,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE KUHN
Fox and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 22, 2026

---

The Harris Law Firm PLLP, Katherine O. Ellis, Denver, Colorado, for Appellee

Jones Law Firm, P.C., Jessica Crawford, Greenwood Village, Colorado, for Appellant

¶ 1     Cheyenne Maggard (mother) appeals the district court magistrate's judgment allocating parental responsibilities in connection with the dissolution of her marriage to Brock Maggard (father). We affirm.

## I.     Background

¶ 2     Mother and father jointly petitioned for a dissolution of marriage. Early in the dissolution case, the court entered temporary orders, directing the parents to exercise equal parenting time with their two children. The court then appointed a child and family investigator (CFI).

¶ 3     After investigating, the CFI reported that both parents were unable to control their emotions, involved the children in their conflicts, and likely committed acts of domestic violence against each other. The CFI also reported that, a few years earlier, mother had left the home "for an extended period of time" and father assumed primary caregiving responsibilities for about two years. The CFI ultimately recommended that the parents exercise equal parenting time, "despite all of [her] . . . concerns with both parents." She further recommended that, given their inability to make joint decisions for the children, father should receive sole authority over

1

educational and extracurricular decisions and mother should receive sole authority over medical and religious decisions.

¶ 4 After a hearing, the court issued permanent orders. The court ordered that, during the school year, father would have primary parenting time and mother would have parenting time every first, third, and fifth weekend of the month as well as a dinner visit every Wednesday. It further ordered that, in June and July, mother would have primary parenting time and father would have parenting time every first, third, and fifth weekend of the month as well as a dinner visit every Wednesday. The court also allocated sole decision-making responsibility over all major decisions to father.

## II.  Analysis

¶ 5 Mother contends that the court erred by making insufficient findings concerning its decision to allocate father majority parenting time and sole decision-making responsibility. We disagree.

### A.  Applicable Law and Standard of Review

¶ 6 When allocating parenting time and decision-making responsibility, the court must focus on the children's best interests, giving paramount consideration to the children's safety, needs, and

physical, mental, and emotional conditions.  *See* §§ 14-10-123.4(1)(a), 14-10-124(1.5), (1.7), C.R.S. 2025; *In re Marriage of Collins*, 2023 COA 116M, ¶ 7.  In making its determination, the court considers all relevant factors, including the best interests factors identified in section 14-10-124(1.5)(a) and (b).  *See Collins*, ¶ 7; *In re Marriage of Morgan*, 2018 COA 116M, ¶ 21.  The court need not make express findings on each of the factors, but its findings must allow the reviewing court to determine whether its decision is supported by competent evidence.  *See In re Marriage of Fickling*, 100 P.3d 571, 575 (Colo. App. 2004).  "Factual findings are sufficient if they identify the evidence which the fact finder deemed persuasive and determinative of the issues raised."  *In re Marriage of Garst*, 955 P.2d 1056, 1058 (Colo. App. 1998).

¶ 7    The court has broad discretion over the allocation of parental responsibilities, and we will not disturb its ruling absent an abuse of that discretion.  *See Collins*, ¶ 8; *Morgan*, ¶¶ 23, 26.  The court abuses its discretion when it misapplies the law or acts in a manifestly arbitrary, unreasonable, or unfair manner.  *See In re Marriage of Badawiyeh*, 2023 COA 4, ¶ 9.  We exercise every presumption in favor of upholding a court's best interests decision

and will affirm the decision when it has record support. *See Collins*, ¶ 8; *Morgan*, ¶ 26.

### B. The Court Did Not Abuse Its Discretion When It Allocated Majority Parenting Time To Father

¶ 8     To begin, mother suggests that the court restricted her parenting time by allocating to her drastically less parenting time than she previously enjoyed under the temporary orders. She also argues that the court failed to make the necessary endangerment finding before it restricted her parenting time. *See* §§ 14-10-124(1.5)(a), 14-10-129(1)(b)(I), C.R.S. 2025; *In re Marriage of West*, 94 P.3d 1248, 1251 (Colo. App. 2004). *But see In re Marriage of Dale*, 2025 COA 29, ¶ 32 (concluding that "a purely quantitative reduction in a parent's parenting time is not a restriction on that parent's parenting time rights") (*cert. granted in part* July 21, 2025).

¶ 9     Father disagrees, arguing that the court was not required to make an endangerment finding because a court's quantitative modification of temporary parenting time is not a restriction. *See Spahmer v. Gullette*, 113 P.3d 158, 161 (Colo. 2005) ("[I]t is well established that [temporary] orders merely allocate parental

4

responsibilities pending [the court's final determination at permanent orders]."); *Fickling*, 100 P.3d at 574 ("[T]he question whether a restriction has occurred in parenting time need be answered only when permanent, not temporary, orders are modified."). We agree with father. The best interests standard applied to the court's allocation of parenting time in its permanent orders, and the court was under no obligation to make an endangerment finding when it allocated mother less parenting time than she enjoyed under the temporary orders. *See* § 14-10-124(1.5)(a); *Fickling*, 100 P.3d at 573-74.

¶ 10    We also disagree with mother's claim that the court made insufficient findings to allow meaningful appellate review of its allocation of parenting time primarily to father. After the court recited the applicable law, it made the following relevant findings related to the children's best interests:

- Father was concerned that mother could not place the children's needs ahead of her own needs and believed that it was in the children's best interests to allocate primary parenting time to him. *See* § 14-10-124(1.5)(a)(I), (XI).

- Mother had engaged in a "systematic attempt to prevent the children from having contact" with father. *See* § 14-10-124(1.5)(a)(VI), (VII).

- Mother filed a "groundless" motion to restrict father's parenting time and "used the legal process to impede and stonewall [father's] connection with the children." *See* § 14-10-124(1.5)(a)(VI), (VII).

- Mother had not complied with the court's orders concerning parenting time, refused to accommodate father's parenting time, needlessly involved law enforcement when exchanging the children, and did not allow father to have electronic contact with the children. *See* § 14-10-124(1.5)(a)(VI), (VII).

- Mother "struggle[d] with emotional regulation" and could not appropriately self-regulate. *See* § 14-10-124(1.5)(a)(V).

- Mother left the household for a significant period before the dissolution case and was not present for the children's needs during that time. *See* § 14-10-124(1.5)(a)(VII).

¶ 11    Following these and other findings, the court determined that it was in the children's best interests to allocate majority parenting time to father, and the record supports the court's findings. *See Collins*, ¶ 8; *Morgan*, ¶ 26. Indeed, father testified that mother had not allowed him to exercise all of his court-ordered parenting time and that, during parenting time exchanges, she consistently involved law enforcement. Father also testified that mother was trying to impede his relationship with the children, explaining that she filed multiple, unsuccessful motions to restrict his contact with the children, including a groundless motion to restrict his parenting time shortly before the permanent orders hearing. In addition, father said that mother struggled to control her emotions, and that before the dissolution proceedings, mother left the children in his sole care.

¶ 12    Still, mother highlights that the court also made negative findings against father and that the court failed to explain how it weighed those conflicting findings when determining its allocation

of parenting time.[1]  In particular, she notes that the court found that father contributed to the deterioration of his relationship with the children and that he also struggled to appropriately regulate his emotions (but to a lesser extent than mother).  *See* § 14-10-124(1.5)(a)(III), (V).  She also notes that the court found that both parents (1) inappropriately placed the children in the middle of their adult issues; (2) committed acts of domestic violence; (3) struggled to encourage the sharing of love, affection, and contact between the children and the other parent; (4) attempted to alienate the children from the other parent; and (5) lacked the ability to place the children's needs ahead of their own needs.  *See* § 14-10-124(1.5)(a)(III), (III.5), (VI), (VII), (XI).

¶ 13    However, it was for the district court, not us, to weigh the conflicting evidence and the relevant factors.  *See* § 14-10-124(1.5)(a); *Collins*, ¶ 13; *see also In re Marriage of*

---

[1] We don't consider mother's citation in her opening brief to an unpublished decision by a division of this court.  This court's policy prohibits citation to our opinions that are not selected for official publication, with exceptions not applicable here.  *See* Colo. Jud. Branch, *Colorado Court of Appeals, Citation Policies, Policy Concerning Citation of Opinions Not Selected for Official Publication* (2025), https://perma.cc/Z88K-5U7F.

*Thorburn*, 2022 COA 80, ¶ 49 (recognizing that the district court determines the credibility, weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn from that evidence). After doing so, the court determined that it was in the children's best interests to allocate the majority of parenting time to father. Implicit in that conclusion is the court's determination that, despite its negative findings related to father, the factors weighed in favor of its allocation of the majority of parenting time to him. *See In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 21 (recognizing that a court's findings may be implicit in its ruling); *see also Collins*, ¶ 21 (presuming that the court considered all the evidence). That implicit finding along with the remainder of the court's findings sufficiently explained and supported the court's decision. *See Fickling*, 100 P.3d at 575; *Garst*, 955 P.2d at 1058.

¶ 14    In addition, mother notes that the CFI recommended an equal allocation of parenting time, and the court did not explain why it deviated from that recommendation. However, neither parent asked the court to adopt the CFI's recommendation. Moreover, the court was under no obligation to follow the CFI's recommended allocation

9

of parenting time. *See In re Marriage of McNamara*, 962 P.2d 330, 334 (Colo. App. 1998). It was the court's role to weigh the CFI's investigation and recommendation, along with the other evidence, and determine an allocation that served the children's best interests. *In re Parental Responsibilities Concerning B.J.*, 242 P.3d 1128, 1133 (Colo. 2010). And as discussed above, the court's findings concerning the children's best interests sufficiently explained the basis of its decision to allocate majority parenting time to father.

¶ 15    The court therefore did not abuse its discretion, and its findings sufficiently explained its allocation of parenting time.

C.    The Court Did Not Abuse Its Discretion When It Allocated All Decision-Making Responsibility To Father

¶ 16    We also reject mother's contention that the court failed to make sufficient findings when it allocated all decision-making responsibility to father.

¶ 17    The court found, with record support, that mother and father engaged in acts of domestic violence and that they could not make decisions together for the children. As a result, the court could not allocate joint decision-making responsibility to the parents. *See*

§ 14-10-124(4)(a)(II)(A) (directing that when the court finds that a party has committed domestic violence, it shall not be in the children's best interests to allocate joint decision-making responsibility over a party's objection unless the court finds that there is credible evidence that the parties can make decisions safely and cooperatively in the children's best interests). Then, when deciding whether to allocate sole decision-making responsibility to father or mother, the court considered the best interests factors, made detailed findings on the pertinent factors, and determined that it was in the children's best interests to allocate decision-making responsibility for all major decisions to father.

¶ 18     While the court did not make explicit findings on every single factor under section 14-10-124(1.5)(a) and (b), it was not required to do so. *See Fickling*, 100 P.3d at 575; *Garst*, 955 P.2d at 1058. The court made findings on the relevant best interests factors concerning its determination of parenting time, which were also relevant to its allocation of decision-making responsibility. Specifically, the court found that mother (1) attempted to systematically prevent the children from having contact with father; (2) struggled to regulate her emotions; (3) did not comply with the

court's previous parental orders; (4) needlessly involved law enforcement in parenting issues; and (5) left the children in father's primary care for a significant period before the case.  *See* § 14-10-124(1.5)(a)(III), (V), (VI), (VII).  It further found that the parents were "barely able to be in the same room" together, let alone make joint decisions cooperatively for the children.  *See* § 14-10-124(1.5)(b)(I), (II).  In addition, the court's allocation of parenting time meant that the children lived primarily with father.  Together, these findings demonstrate that the court considered the relevant factors, and they provide a sufficient explanation for the basis of the court's ruling.  *See Fickling*, 100 P.3d at 575; *Garst*, 955 P.2d at 1058.

¶ 19     Still, mother notes that the CFI recommended that the court divide decision-making responsibility by allocating medical and religious decisions to her and educational and extracurricular decisions to father.  She argues that the court made no specific findings explaining why it deviated from this recommendation and declined to allocate any decision-making responsibility to her.  However, the court's findings in support of its allocation adequately explained its decision, and it was not required to make any further

12

explicit findings to deviate from the CFI's recommendation. *See Fickling*, 100 P.3d at 575; *Garst*, 955 P.2d at 1058; *see also McNamara*, 962 P.2d at 334 (recognizing that the court is not required to adopt the CFI's recommendation). To the extent mother also suggests that the court should have given the CFI's recommendation greater weight, we will not reweigh the evidence or set aside the court's determination when, as here, it is supported by the record. *See Thorburn*, ¶ 49; *see also In re Marriage of Evans*, 2021 COA 141, ¶ 45 ("We are not at liberty to re-evaluate the conflicting evidence and set aside findings supported by the record.").

¶ 20    The court therefore acted within its discretion by allocating decision-making responsibility to father, and its findings adequately explained its allocation.

### III.    Disposition

¶ 21    The judgment is affirmed.

JUDGE FOX and JUDGE SULLIVAN concur.