25CA1553 Parental Resp Conc SMA 05-28-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1553
Boulder County District Court No. 24DR30032
Honorable Robert R. Gunning, Judge

In re the Parental Responsibilities Concerning S.M.A., a Child,

and Concerning Jordan Christopher Ashcraft,

Appellant,

and

Elena Irene Barrera,

Appellee.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE SULLIVAN
Pawar and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

Jordan Christopher Ashcroft, Pro Se

No Appearance for Appellee

¶ 1     Jordan Christopher Ashcraft (father) appeals the district court's permanent orders allocating parental responsibilities between him and Elena Irene Barrera (mother).  We affirm the judgment.

## I.     Background

¶ 2     Father petitioned for an allocation of parental responsibilities (APR) for the parties' shared child.  The district court appointed a Child and Family Investigator (CFI) to make recommendations to the court concerning an APR.  Following a permanent orders hearing, the court issued a detailed written ruling allocating father a step-up parenting plan and mother all other parenting time and sole decision-making responsibility.

¶ 3     Through the first phase of the plan, the court granted father six hours per week of professionally supervised parenting time.  After three months of "consistent, safe" supervised time, the court permitted father six hours of unsupervised parenting time each week.  After three months in that phase, the court allocated father two overnights every other weekend.

## II. Parenting Time

¶ 4    Father contends that the district court abused its discretion by (1) ordering professionally supervised parenting time without making endangerment findings, and (2) imposing the step-up plan without making express findings justifying its duration or structure. We aren't convinced.

### A. Standard of Review and Relevant Legal Principles

¶ 5    A district court enjoys broad discretion over parenting time matters, and we exercise every presumption in favor of upholding its decision. *See In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 13. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or is based on a misapplication of the law. *In re Marriage of Evans*, 2021 COA 141, ¶ 25. However, we review the court's application of the law de novo. *In re Marriage of Badawiyeh*, 2023 COA 4, ¶ 10.

¶ 6    A court must allocate parenting time in accordance with the child's best interests, giving paramount consideration to the child's safety and physical, mental, and emotional conditions and needs. § 14-10-124(1.5)(a), C.R.S. 2025; *see In re Marriage of Pawelec*, 2024 COA 107, ¶ 43. In doing so, a court considers all relevant

factors, including those set forth in section 14-10-124(1.5)(a) (the best interests standard).

¶ 7     Section 14-10-129(1)(b)(I), C.R.S. 2025, (the endangerment standard) provides that a court can't "restrict a parent's parenting time rights unless it finds that the parenting time would endanger the child's physical health or significantly impair the child's emotional development." § 14-10-129(1)(b)(I).  In addition to finding endangerment, any order imposing a restriction must "enumerate the specific factual findings supporting the restriction."  *Id.*; § 14-10-124(1.5)(a).

### B.     Supervised Parenting Time

¶ 8     Father first argues that the district court improperly restricted his parenting time through the professional supervision requirement.  Specifically, he asserts that the court was required, but failed, to find that unsupervised parenting time would endanger the child under the endangerment standard.

¶ 9     But the best interests standard governs an initial APR determination, like the permanent orders here.  *See* § 14-10-124(1.5)(a); *Pawelec,* ¶ 43; *cf. Spahmer v. Gullette*, 113 P.3d 158, 161 (Colo. 2005) (section 14-10-124, not section 14-10-129, applies

to an initial parental responsibilities determination, even if temporary parenting time orders were entered pending a final determination). The court applied the best interests standard in this case. And, while the court would have been required to find endangerment if it granted father no parenting time, the court allocated father parenting time, albeit supervised. *See* § 14-10-124(1.5)(a) (The court "may make provisions for parenting time that the court finds are in the best interests of the child . . . *unless* the court finds, after a hearing, that parenting time by the party would endanger the child's physical health or significantly impair the child's emotional development." (emphasis added)).

¶ 10    The endangerment standard, on the other hand, applies to a restriction of a parent's "parenting time rights." *See* § 14-10-129(1)(b)(I); *see also In re Marriage of Dale*, 2025 COA 29, ¶ 32 (defining a restriction on a "parent's parenting time rights" for the purposes of the endangerment standard) (*cert. granted in part* July 21, 2025). But before the court entered permanent orders, it hadn't yet granted parenting time rights. *See In re Marriage of Fickling*, 100 P.3d 571, 574 (Colo. App. 2004) ("Only permanent orders grant 'parenting time rights.'"). Thus, the APR ruling within the

permanent orders granted father "parenting time rights" as that phrase is used in the endangerment standard — it didn't restrict those rights. *See Spahmer*, 113 P.3d at 163 (At the time of dissolution, "[n]either [party] has vested parenting rights . . . subject to restriction by the court."); *see also Fickling*, 100 P.3d at 574 ("[T]he question whether a restriction has occurred in parenting time need be answered only when permanent, not temporary, orders are modified.").

¶ 11    As a result, we conclude that the court wasn't required to apply the endangerment standard when it imposed a supervision requirement on the first phase of father's step-up plan.

¶ 12    In any event, we conclude that the court didn't abuse its discretion by ordering that the first phase of father's parenting time be supervised under section 14-10-124(4)(e)(III).

¶ 13    When a court finds by a preponderance of the evidence that a party has committed domestic violence, it must consider (1) as the primary concern, the safety and wellbeing of the child and the abused party; and (2) conditions on parenting time that ensure the safety of the child and the abused party.  § 14-10-124(4)(d)-(e).  One

5

such condition is an order that parenting time be supervised. § 14-10-124(4)(e)(III).

¶ 14 While the court didn't expressly find that father had committed domestic violence, we can infer from its findings and order that the court made such a determination. *See In re Marriage of Nelson*, 2012 COA 205, ¶ 41 (upholding district court's decision based on its implied findings, which were sufficient); *In re Marriage of Garst*, 955 P.2d 1056, 1059 (Colo. App. 1998) (noting that, while the trial court could have made more specific findings, its findings and reference to the parenting evaluation "demonstrate that the trial court considered" the appropriate best interests factors).

¶ 15 The court cited to section 14-10-124(4)(d) in its ruling, as well as the definitions of domestic violence and coercive control within that statute. *See* § 14-10-124(1.3)(a)-(b). And the court noted that it "placed most weight on the safety and well-being of the child," among other factors. *See* § 14-10-124(4)(d). Moreover, it found that father (1) directed inflammatory, insulting, and harassing communications toward mother; (2) had escalated his "pattern of verbal harassment and vitriol" toward mother during the two years preceding permanent orders; and (3) used financial support to

control and belittle mother. The court also found credible the CFI's concern that father's behavior was "motivated by a desire to overwhelm and exhaust" mother so that she would "give in" to his demands.

¶ 16 Bearing this in mind, we turn to the court's findings concerning the child's interrelationship with father. As relevant here, the court made the following findings:

- While father had many of the tools that would allow him to provide a safe environment for the child, he had "allowed his animus against Mother to overshadow his relationship" with the child.

- Father withheld his time, love, and affection from the child as leverage for mother to adopt his preferred parenting plan.

- Father exercised very limited parenting time during the six months preceding the APR determination and his "stepping back" appeared to affect the child.

- Father's decisions had a "direct impact" on the child's well-being.

¶ 17 The court ultimately determined that professional supervision during the first phase of father's step-up plan was in the child's

best interests. *See* § 14-10-124(4)(e)(III). The court based this on (1) the length of time since the child had consistent parenting time with father and (2) mother's and the CFI's credible concerns about father's "involvement of [the child] in parenting decisions."

¶ 18 While the CFI's concerns are apparent in the court's ruling and the CFI report, we can't discern on the available record whether the CFI testified further about these issues at the permanent orders hearing. Nor can we tell what mother's specific concerns were. That is because father didn't provide us with the transcripts from the court's permanent orders hearing, though he bore responsibility to do so. *See* C.A.R. 10(d)(3) ("The appellant must include in the record transcripts of all proceedings necessary for considering and deciding the issues on appeal."); *In re Marriage of Tagen*, 62 P.3d 1092, 1096 (Colo. App. 2002). Because these transcripts aren't in the record, we must presume that they support the court's judgment. *See Tagen*, 62 P.3d at 1096.

¶ 19 Still, father claims that the court based the supervision order on "generalized concerns regarding parental conflict." We reject this claim in light of the court's findings discussed above. What's more, the court expressly determined that "[p]rofessional supervision will

enhance objective accountability for consistency and commitment to appropriate and health[y] contact between Father and child."

¶ 20    For these reasons, we conclude that the court didn't abuse its discretion by applying the best interests standard to the initial APR determination.  Nor did it abuse its discretion by ordering that the first phase of father's parenting time be supervised after applying the best interests standard and considering the provisions of section 14-10-124(4)(d)-(e).

C.    Adequacy of Findings Underlying Step-Up Plan

¶ 21    Father also asserts that the district court abused its discretion by imposing the step-up parenting plan without adequate findings justifying its duration or structure.  We are unpersuaded.

¶ 22    The court made extensive factual findings, including with respect to certain section 14-10-124(1.5)(a) factors.  It found that father had often been unable to place the child's interests over his own and that his ability to encourage the sharing of affection and contact between the child and mother was limited.  *See* § 14-10-124(1.5)(a)(VI), (XI).  As noted, father also had very limited and sporadic parenting time during the six-month period preceding the court's ruling.

¶ 23    Further, the court specifically explained the basis for father's step-up parenting plan, which it determined was in the child's best interests.  *See* § 14-10-124(1.5)(a); *Pawelec*, ¶ 43.  It concluded that a step-up parenting plan was most likely to facilitate a "strong, safe relationship" while giving father time to demonstrate consistency to the child.  And it determined that frequent, gradually increasing parenting time was appropriate because of father's struggle to place the child's needs before his own and his sporadic, limited parenting time during the six months before its ruling.  Moreover, the court explained that the supervised phase of the plan was a "bridge between very limited contact and a future consistent, healthy unsupervised parenting time schedule."

¶ 24    In short, the court's thorough ruling contains findings and conclusions sufficiently explicit that we have a clear understanding of the basis for its decision.  *See In re Marriage of Rozzi*, 190 P.3d 815, 822 (Colo. App. 2008).  Father points us to no legal authority that persuades us that more was necessary.  Thus, we reject his contention that further findings or explanation by the court were required.

¶ 25    To the extent father asserts the court was required to make express findings concerning less detrimental alternatives to its designation of parenting time, he offers no authority in support of this assertion.  Nor are we aware of any.  *See In re Marriage of Martin*, 42 P.3d 75, 78 (Colo. App. 2002) (recognizing that the concept of least detrimental alternative is subsumed within the concept of the best interests of the child); *see also In re Marriage of Hatton*, 160 P.3d 326, 333 (Colo. App. 2007) (holding that a court may not "*completely deny* . . . parenting time under the best interests standard without express consideration of whether doing so is the least detrimental alternative." (emphasis added)).

¶ 26    Finally, the court acted within its discretion when it adopted certain recommendations by the CFI after considering the evidence and the CFI report.  *See* § 14-10-116.5(2)(b), C.R.S. 2025 (providing that the court shall consider the entire CFI report, and any testimony, before adopting any of the CFI's recommendations). Thus, we reject any suggestion to the contrary by father.

### III.    Disposition

¶ 27    We affirm the judgment.

JUDGE PAWAR and JUDGE MEIRINK concur.