

peal and address petitioner's contentions on their merits.

M. Patricia Marrison, P.C., Donna Ellis, M. Patricia Marrison, Jennifer G.H. Cox, Kenneth R. Hodges, Colorado Springs, Colorado, for Appellee.

Guy M. McCready, Colorado Springs, Colorado, for Appellant.

**In re the MARRIAGE OF Michelle DEZALIA, Appellee,**

v.

**Brandon DeZalia, Appellant.**

**No. 05CA2455.**

Colorado Court of Appeals, Div. I.

Nov. 30, 2006.

Opinion by Judge MÁRQUEZ.

In this post-dissolution of marriage proceeding, Brandon DeZalia (father) appeals from the order allowing Michelle DeZalia (mother) to relocate to another state with the parties' children. We affirm.

Father and mother are the parents of twin children born in 2002. In February 2004, they entered into a separation agreement that provided that they would share parenting time and decision-making. In addition, the agreement specified the circumstances in which mother would be permitted to relocate with the children to Florida, as she wished to do.

In July 2004, mother moved pursuant to C.R.C.P. 60(b) to set aside the separation agreement on grounds of fraud, mistake, and excusable neglect. In the alternative, she moved for modification of parental responsibilities, alleging, among other things, that she wished to move to Florida, her home state, and that her mental health practitioner had advised her to do so. The court denied her motion and ordered a custody evaluation.

In August 2005, mother again sought permission to remove the children to Florida. In September, the parenting coordinator submitted her report. After reviewing all the statutory factors set forth in §§ 14–10–124(1.5)(a) and 14–10–129(2)(c), C.R.S.2006, she recommended that mother be permitted to relocate.

After hearing the testimony of both parties and the parenting coordinator at trial, the court determined that mother should be permitted to move. Father was granted two weeks of parenting time every two months.

Father contends that the trial court erred in allowing mother to file a motion to remove the children from Colorado pursuant to § 14–10–129(1)(a)(II), C.R.S.2006. He argues that because the children did not reside with either parent a majority of the time,

§ 14–10–129(1)(a)(II) does not apply, and thus, the court should have employed the endangerment standard of § 14–10–129(1)(b)(I), C.R.S.2006, rather than the best interests standard, when deciding whether mother should be permitted to relocate with the children. We do not agree.

Section 14–10–129, C.R.S.2006, sets forth two standards for modification of parenting time rights. Generally, the court may make or modify an order granting or denying parenting time rights whenever such order or modification would serve the best interests of the child. Section 14–10–129(1)(a)(I), C.R.S. 2006. Special provision has been made for modification of parenting time rights in the event that the party with whom the child resides a majority of the time seeks to relocate with the child. As pertinent to this appeal, § 14–10–129(1)(a)(II) provides:

> In those cases in which a party with whom the child resides a majority of the time is seeking to relocate with the child to a residence that substantially changes the geographical ties between the child and the other party, the court, in determining whether the modification of parenting time is in the best interests of the child, shall take into account all relevant factors, including those enumerated in paragraph (c) of subsection (2) of this section.

The relevant factors to be considered include all factors enumerated in § 14–10–124(1.5)(a) and nine additional factors set forth in § 14–10–129(2)(c).

However, § 14–10–129(1)(b)(I) provides that the court may not restrict a parent's parenting time rights unless it finds that the parenting time would endanger the child's physical health or significantly impair the child's emotional development.

Although the relocation of one parent with the child may substantially reduce the other parent's parenting time, § 14–10–129(1)(b)(II) provides that the provisions of § 14–10–129(1)(b)(I) "shall not apply in those cases in which a party with whom the child resides a majority of the time is intending to relocate with the child to a residence that substantially changes the geographical ties between the child and the other party." Thus, a reduction in parenting time resulting from the other parent's relocation with the child is not to be construed as a restriction requiring the court to apply the endangerment standard set forth in § 14–10–129(1)(b)(I).

In addition, although modification of a prior order concerning parenting time in a manner that substantially changes the parenting time as well as changes the party with whom the child resides a majority of the time is generally discouraged under § 14–10–129(2), C.R.S.2006, the proposed relocation of a majority time parent with the child is one of the circumstances in which the court may order such a modification. Section 14–10–129(2)(c).

Interpretation of a statute is a question of law that we review de novo. In construing a statute, we must strive to give effect to the intent of the legislature and adopt the statutory construction that best effectuates the purposes of the legislative scheme, looking first to the plain language of the statute. *In re Marriage of Ciesluk*, 113 P.3d 135 (Colo. 2005).

Section 14–10–129(1)(a)(II) is the only portion of the statute that addresses relocation, but it refers only to the circumstances of a party with whom the child resides the majority of the time.

To determine the standard applicable to situations where, as here, the parents share parenting time, we look to the history of the question of relocation.

Before § 14–10–129 was amended to set forth a new procedure for determining whether it would be in a child's best interests to modify parenting time to accommodate a majority time parent's desire to relocate with the child, the procedure for determining whether relocation was in a child's best interests was that set forth in *In re Marriage of Francis*, 919 P.2d 776 (Colo.1996). *Francis* established a three-part test. The custodial parent was required to present a prima facie case showing that there was a sensible reason for the move. If the custodial parent presented such a case, a presumption in favor of allowing the child to move with the custodial parent arose. The burden then shifted to the noncustodial parent to show

that the move was not in the child's best interests.

The *Francis* test applied when a sole residential custodian proposed to relocate with a child. The *Francis* court noted that the presumption in favor of the residential custodian was "necessarily weakened to the extent parents share both residential and legal custody," but the court declined to resolve the issue of how a parent's desire to relocate with a child should be evaluated when both parents shared residential custody. *In re Marriage of Francis, supra,* 919 P.2d at 785.

In 2001, § 14–10–129 was amended to set forth a new procedure for determining whether relocation was in a child's best interests. As explained in *In re Marriage of Ciesluk, supra,* § 14–10–129 was amended in response to dissatisfaction with the *Francis* test. It was the intent of the General Assembly to eliminate the *Francis* presumption in favor of the majority time parent and replace it with a "liberal fact-driven analysis." *In re Marriage of Ciesluk, supra,* 113 P.3d at 141.

Although the supreme court in *Ciesluk* did not resolve the issue of how removal should be evaluated when parents share parenting time, the court noted:

> [T]he issue in relocation cases is the extent to which the parents' needs and desires are intertwined with the child's best interests. Thus, relocation disputes present courts with a unique challenge: to promote the best interests of the child while affording protection equally between a majority time parent's right to travel and a minority time parent's right to parent.

*In re Marriage of Ciesluk, supra,* 113 P.3d at 142 (citation omitted). The court concluded that this could best be accomplished "if each parent shares equally in the burden of demonstrating how the child's best interests will be impacted by the proposed relocation." *In re Marriage of Ciesluk, supra,* 113 P.3d at 146.

Here, the parties agreed that the children would "reside jointly with both parents." At trial, father argued that the endangerment standard set forth in § 14–10–129(1)(b)(I) should be applied because the children did not reside with mother the majority of the time, and thus, mother could not file a motion to remove the children from Colorado pursuant to § 14–10–129(1)(a)(II). The court rejected this argument, noting that interpreting the statute as father suggested would effectively render it impossible for parties who shared parenting time equally to move, and concluding that this result did not make sense.

We agree that father's interpretation of the statute must be rejected. Relocation of a parent with a child to a residence that substantially changes the geographical ties between the child and the other parent implicates both the relocating parent's right to travel and the remaining parent's right to parent the child. An interpretation of § 14–10–129 that would hinder relocation by either parent similarly implicates both parents' constitutional rights as well as the interests of the child.

In *Ciesluk,* the supreme court set forth a procedure for Colorado courts to use in resolving relocation issues. This procedure is intended to promote the best interests of the child while protecting both parents' rights equally. The application of the endangerment standard set forth in § 14–10–129(1)(b)(I), as suggested by father, is inconsistent with the procedure set forth in *Ciesluk* in that it would effectively create a presumption in favor of father, the parent opposing relocation, and thus, would require mother to bear a significantly greater burden in attempting to demonstrate that the relocation should be permitted.

In addition, the application of the endangerment standard is inappropriate in a situation which closely resembles an initial allocation of parental responsibilities in that the court must allocate parental responsibilities between parents who previously shared equally in the case and control of the child. *See In re Marriage of Garst,* 955 P.2d 1056, 1060 (Colo.App.1998) (modification of shared custody is indistinguishable from the initial award of custody because both decisions arise from situations in which the parents theoretically share the legal and physical care of the child; because best interest standard applies to orders awarding initial custo-

dy, it should also apply to removal orders that will modify shared custody).

We are persuaded that the goal of promoting the best interests of the child while affording protection equally to a majority time parent's right to travel and a minority time parent's right to parent is best achieved, and the General Assembly's intent and the beneficial purpose of § 14–10–129 are best effectuated, by construing the portions of § 14–10–129 that reference relocation by "a party with whom the child resides a majority of the time" to include and be consistent with relocation by a party who, at the time the motion is filed, shares parenting time equally with the other parent but desires to relocate with the child and to modify parenting time so as to become the majority time parent. The trial court effectively did so here. The court did not err in applying the best interests standard set forth in § 14–10–129(1)(a)(II) and considering the factors mandated under that section, rather than applying the endangerment standard set forth in § 14–10–129(1)(b)(I) to mother's motion to remove the children to Florida.

The order is affirmed.

Judge VOGT and Judge RUSSEL concur.