24CA1857 Parental Resp Conc ANT 12-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1857
Jefferson County District Court No. 17DR2074
Honorable Chantel E. Contiguglia, Judge

In re the Parental Responsibilities Concerning A.N.T., a Child,

and Concerning Troy Randy Thompson,

Appellee,

and

Marissa Jeanne Roy n/k/a Marissa Garcia,

Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE GRAHAM*
Lipinsky and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 24, 2025

Jennifer Anntoinette Rivera, Denver, Colorado, for Appellee

Womble Bond Dickinson (US) LLP, Kendra N. Beckwith, Elizabeth Michaels, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Marissa Jeanne Roy, now known as Marissa Garcia (mother), appeals the district court's order denying her motion to relocate the parties' daughter (the child) to Nevada.  Mother specifically argues that the district court erred by (1) unconstitutionally infringing on her right to travel; (2) applying a presumption against relocation; and (3) failing to consider all the applicable statutory factors and making factual findings unsupported by the record.  We affirm.

## I.     Background

¶ 2     After their relationship ended, mother and Troy Randy Thompson (father) agreed to jointly parent the child, who is now eleven.  Mother and father agreed to joint decision-making, equal parenting time, and equally divided financial responsibilities for the child.

¶ 3     A few years later, mother married Louis Garcia (stepfather).  They had three children together.  In 2023, mother and stepfather moved to Nevada with their three children and stepfather's daughter from a previous relationship.  The child remained in Colorado, however, and father became her primary caregiver.  One year later, mother filed the motion to relocate the child to Nevada.

¶ 4    In 2024, the district court held a hearing on the motion. After hearing testimony and reviewing evidence from both parties, the court concluded that it was in the child's best interests to remain in Colorado and denied mother's motion to relocate the child.

## II.    Mother's Right to Travel

¶ 5    Mother claims that the district court violated her constitutional right to travel by "disapprov[ing]" of her move to Nevada. Because this issue is unpreserved, we do not consider it.

¶ 6    As father points out — and mother concedes — mother did not raise her right to travel argument at the hearing. In civil cases like this one "[w]e do not consider constitutional issues raised for the first time on appeal." *McGihon v. Cave*, 2016 COA 78, ¶ 16.

¶ 7    Mother argues that, by basing its decision on its disapproval of her move to Nevada, the court denied her motion on grounds that neither she nor father raised and thereby deprived her of an opportunity to raise her constitutional argument before the ruling. But the record shows that the court didn't base its decision on disapproval of mother's move.

¶ 8    During its extensive consideration of the statutory factors, the district court only mentioned mother's move twice and never as a

basis for its denial of mother's motion. The court's only expression of concern over mother's move related to how "suddenly it seemed to the Court and through [father's] testimony that the child suddenly came into his primary care." This hardly constitutes a ruling beyond the scope of the parties' arguments, as mother claims.

¶ 9 Thus, since the district court did not rule on mother's right to travel and mother did not raise this constitutional argument at the hearing, we do not review it.

### III. Presumption Against Relocation

¶ 10 Mother next argues that the district court erred by applying a presumption against relocation. It did not apply such a presumption, however.

### A. Legal Principles and Standard of Review

¶ 11 When ruling on a motion to relocate a child, courts consider several statutory factors to determine whether the move "is in the

best interests of the child."[1] § 14-10-129(2)(c), C.R.S. 2025; *see* § 14-10-124(1.5)(a), C.R.S. 2025.  Because both parents have an equal burden of demonstrating what is in the child's best interests, courts may not create a presumption in favor of either parent when adjudicating a majority time parent's motion to remove the child from the state.  *See In re Marriage of Ciesluk*, 113 P.3d 135, 137, 149 (Colo. 2005).

¶ 12     We review a district court's best interests analysis under section 14-10-129(2)(c) for an abuse of discretion.  *Ciesluk*, 113 P.3d at 148.  "A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law."  *In re Marriage of Dale*, 2025 COA 29, ¶ 7 (*cert. granted in part* July 21, 2025).  A court has broad discretion in deciding parenting time and "every presumption that

---

[1] The statutory best interests analysis applies when (1) the relocating party is already the primary parent or (2) there is equal parenting time, but the move would make the relocating party the primary parent.  *See In re Marriage of DeZalia*, 151 P.3d 647, 650 (Colo. App. 2006).  Though not addressed by the parties, we consider mother and father to have had equal parenting time when mother filed her motion to relocate, as they stipulated in the parenting plan in effect at that time.

supports upholding the court's decision will be exercised." *In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007).

### B. The District Court Didn't Apply a Presumption Against Relocation

¶ 13    Mother again directs us to the district court's comments about her move to Nevada as evidence that the court allegedly applied a presumption against relocation. But as discussed previously, the court didn't disapprove of her move — only its abrupt impact on the child when father suddenly became the child's primary caregiver.

¶ 14    Mother also highlights the district court's reluctance to disrupt the child's academic growth. The court cited testimony from her teachers and found that she was "working diligently towards an [individualized education program] and overcoming the growth and issues that she has." That the court also said, "[n]ot to suggest that the Nevada [school] wouldn't do the same," does not prove that the court kept the child in Colorado based on a presumption against relocation. On the contrary, the court's observation appeared to assign equal opportunity to the child in the Nevada and Colorado school systems.

¶ 15 And the court properly evaluated the statutory factors — which include "[t]he educational opportunities for the child at the existing location and at the proposed new location" — to conclude that staying in Colorado was in the child's best interests. § 14-10-129(2)(c)(IV). Indeed, one of the statutory factors is "[a]ny advantages of the child remaining with the primary caregiver." § 14-10-129(2)(c)(VI). Unlike in *Ciesluk*, where the trial court "rel[ied] on a general conclusion that parents should remain in close proximity to the child," 113 P.3d at 149, here, the court made findings specific to the child, emphasizing evidence of the significant growth in her language skills and her strong interpersonal relationships with her teachers, family, and friends, *see id.* at 148 (finding direct benefits to the child from "the stability of remaining with his majority time parent" and "day-to-day relationships" with family).

¶ 16 Nor did the district court place a burden on mother to show how the move would "enhance" the child. *See id.* at 149. Rather, the court evaluated the proposed move's negative impact on the child. *See* § 14-10-129(2)(c)(VII) (enumerating factor of "[t]he anticipated impact of the move on the child"). The court concluded,

"[T]he move will be significant on the life of the child. . . . She's a 10-year-old child who's been in Colorado her entire life, which is where her teachers, her family, her friends, and her school [have] been established."

¶ 17    Because the record supports the court's finding that it was in the best interests of the child to maintain the advantages of staying with father and avoid the disruption of the move, the district court did not apply a presumption against relocation and therefore did not abuse its discretion.

## IV.    Statutory Factors and Factual Findings

¶ 18    Lastly, mother contends that the district court erred by failing to consider all the statutory factors and by making factual findings without evidentiary support. We are unpersuaded.

### A.    Legal Principles and Standard of Review

¶ 19    A court "shall take into account" and "shall consider" all enumerated and relevant factors when deciding whether a motion to relocate is in the best interests of a child. § 14-10-129(2)(c).

¶ 20    We review a district court's best interests determination for an abuse of discretion. *Ciesluk*, 113 P.3d at 148. We set aside a court's factual findings "only when they are so clearly erroneous as

to find no support in the record." *People v. V.K.L.*, 2022 CO 35, ¶ 20 (citation omitted).

### B. The District Court Didn't Abuse Its Discretion

¶ 21 Mother asserts that, under section 14-10-129(2)(c)(VI), the district court was required to make findings about "[a]ny advantages of the child remaining with the primary caregiver," and should have concluded that mother's parenting style was better for the child.[2] But the district court did consider and discuss in detail both parties' relationship with the child and concluded, "She feels comfortable and safe with both parents. Both parents provide emotional support and otherwise are stable for the child."

¶ 22 True, the child and family investigator (CFI) assigned to the case concluded that mother's parenting style provided greater structure for the child than did father's style. But "a trial court [is]

---

[2] The statutory factor mother cites concerns any advantages of the child remaining with the child's *primary caregiver*. § 14-10-129(2)(c)(VI), C.R.S. 2025. But the district court found that father — not mother — had been the child's primary caregiver since mother moved to Nevada in 2023. *See In re Marriage of Ciesluk*, 113 P.3d 135, 148 (Colo. 2005) (defining "primary caregiver" in terms of larger share of parenting time and primary residential parent). Thus, any findings on this statutory factor could not have benefited mother's position.

free to reach its own conclusions and [is] not required to follow the recommendation of [an] evaluator." *In re Marriage of McNamara*, 962 P.2d 330, 334 (Colo. App. 1998). The court was well within its discretion to conclude, "[Father's] parenting approach might be different, as described by the CFI as more of . . . laissez faire and less structured than [mother's]. It doesn't mean that his approach is any less important to the child."

¶ 23 Regarding the other statutory factors, the district court conducted a thorough review of each factor and made findings supported by the record. For example, to the extent that the court commented on the reasons for mother's move to Nevada, the record supports its conclusion that the move was attributable to "a change in either the pay or the benefits [of stepfather's job], or there was something to benefit her family better." The fact that stepfather was offered the new job after his Colorado position was eliminated is irrelevant to the accuracy of the court's finding.

¶ 24 The district court also didn't abuse its discretion in finding that the child had family members in Colorado to whom she could turn for puberty-related issues. Though mother testified that, in one instance, the child waited to visit her for a puberty-related

issue for which the child wasn't comfortable going to father, the record also demonstrates that the child had other close family members in Colorado, so that she was not relegated to seeking father's guidance. The court's conclusion that she could turn to other family members in Colorado for help was not "clearly erroneous." *V.K.L.*, ¶ 20 (citation omitted).

¶ 25 That mother disagrees with the court's analysis of the statutory factors, or even the fact that the record could support opposite conclusions, is insufficient proof that the court abused its discretion. *See People v. Brown*, 2014 COA 155M-2, ¶ 29 (deferring to findings of fact supported by the record "even though a contrary position may find support in the record and even though we might have reached a different result").

¶ 26 Since the district court properly considered the statutory factors and the record supports its findings, the court did not abuse its discretion.

## V. Disposition

¶ 27 The order is affirmed.

JUDGE LIPINSKY and JUDGE KUHN concur.