25CA1282 Marriage of Schultz 04-09-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1282
El Paso County District Court No. 22DR31526
Honorable Samuel Evig, Judge

---

In re the Marriage of

Emily Schultz,

Appellee,

and

Travis Schultz,

Appellant.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE SULLIVAN
Fox and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 9, 2026

---

Emily Schultz, Pro Se

Griner Legal, LLC, Amy D. Griner Guheen, Lakewood, Colorado, for Appellant

¶ 1     In this post-decree dissolution of marriage case between Travis Schultz (father) and Emily Schultz (mother), father appeals the district court's order denying his motion to relocate with their child. We affirm.

## I.     Background

¶ 2     In 2023, the district court dissolved the parties' marriage and entered permanent orders allocating parental responsibilities for their then-seven-year-old child.  The court ordered that father would be the primary custodian and that the child would live with him in Wisconsin during the school year.  It granted mother parenting time in Colorado during the summer and monthly visits in Wisconsin during the school year.

¶ 3     One year later, father filed a motion to relocate from Wisconsin to Alaska with the child.  Mother objected to the proposed relocation and requested that the court designate her as the primary custodian and grant her majority parenting time.

¶ 4     At father's request, the district court appointed a child and family investigator (CFI) to evaluate whether relocation would be in the child's best interests.  After completing her investigation, the CFI filed a report in which she concluded that relocation to Alaska

1

wouldn't be in the child's best interests and recommended that the child live primarily with mother in Colorado.

¶ 5　　In May 2025, the district court held a contested hearing on father's motion.  Thereafter, the court issued a written order denying father's request to move to Alaska.  It designated mother as the primary custodian and ordered that the child live primarily with her in Colorado.  It also granted father parenting time in Alaska during the summer and monthly visits in Colorado during the school year.

## II.　Discussion

¶ 6　　On appeal, father contends (1) that the district court applied the wrong legal standard when analyzing his motion to relocate and (2) that the court's decision denying his motion constituted an abuse of discretion because it wasn't supported by the record or in the child's best interests.  We reject both contentions.

### A.　Applicable Law and Standard of Review

¶ 7　　The standards for modification of parenting time are codified in section 14-10-129, C.R.S. 2025.  *In re Marriage of Dale*, 2025 COA 29, ¶ 9 (*cert. granted in part* July 21, 2025).  Generally, "the court may make or modify an order granting or denying parenting

time rights whenever such order or modification would serve the best interests of the child." § 14-10-129(1)(a)(I).

¶ 8        However, section 14-10-129(2) limits the court's ability to modify a prior parenting time order in a way that "substantially changes" parenting time and changes the party with whom the child resides a majority of the time.  In such instances, the court "shall retain the parenting time schedule established in the prior decree" unless, as provided in subsection (c), the party with whom the child resides a majority of the time is intending to relocate with the child to a residence that substantially changes the geographical ties between the child and the other party (the relocation subsection), or, as provided in subsection (d), the child's present environment endangers the child's physical health or significantly impairs the child's emotional development and the advantage of a change of environment outweighs the harm a change would likely cause to the child (the endangerment subsection).
§ 14-10-129(2)(c)-(d).

¶ 9        In determining whether to modify a parenting time order under the relocation subsection, the court must apply the best interests standard.  *See In re Marriage of Ciesluk*, 113 P.3d 135,

140-48 (Colo. 2005); *In re Marriage of DeZalia*, 151 P.3d 647, 650 (Colo. App. 2006). More specifically, the court must consider the best interest factors in section 14-10-124(1.5)(a), C.R.S. 2025, and the relocation factors in section 14-10-129(2)(c). *See* § 14-10-129(2)(c); *Ciesluk*, 113 P.3d at 140. In doing so, the court must begin its analysis with each parent on equal footing and may not presume that the child is made better off or disadvantaged by relocating with the moving parent. *Ciesluk*, 113 P.3d at 147. Each parent has the burden to persuade the court that the relocation would be in, or contrary to, the child's best interests. *Id.* at 148.

¶ 10    By contrast, to modify under the endangerment subsection, the court must start with a presumption that the prior orders, or status quo, should remain in effect. *In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 21. To overcome the presumption, the court must find that the evidence shows that the status quo endangers the child and that the proposed modification will create advantages that outweigh any harm it may cause. *Id.* The court must also determine whether the proposed modification is in the child's best interests. *Id.*

¶ 11    We review parenting time modifications for an abuse of discretion. *Dale*, ¶ 7. Thus, we won't disturb the district court's decision unless it is manifestly arbitrary, unreasonable, or unfair, or it misconstrues or misapplies the law. *Id.* at ¶ 8; *In re Marriage of Gibbs*, 2019 COA 104, ¶ 8. We also won't disturb the court's factual findings when the record supports them. *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10. But we review de novo whether the court applied the appropriate legal standard when modifying parenting time. *Dale*, ¶ 8.

### B.    Application of the Best Interests Standard

¶ 12    Father argues that the district court erred by applying the best interests standard instead of the endangerment standard. He doesn't dispute that the best interests standard applies when a court modifies parenting time under section 14-10-129(2)(c). Rather, he argues that that the relocation subsection didn't apply to his motion because a move from Wisconsin to Alaska wouldn't have "substantially change[d] the geographical ties" between mother and the child. Consequently, he asserts that the only authority for changing the child's primary custodian came from the

endangerment subsection, which the court didn't apply. We discern no error.

### 1. Preservation

¶ 13    As a threshold matter, mother asserts that father failed to preserve his legal standard argument for appeal. We agree that father never argued to the district court that it should apply the endangerment standard in resolving his motion. And father admits that "there was never a direct discussion about which legal standard should be applied."

¶ 14    Moreover, in father's motion to relocate, he specifically cited section 14-10-129(2)(c) as the basis for his request, never mentioning subsection (2)(d) or the endangerment standard. In addition, in the parties' joint trial management certificate, father asserted that the court should consider the child's best interests. He further asserted, citing *Ciesluk*, that the court was required to begin its analysis "with each parent on equal footing" and couldn't presume that the child was made better off or disadvantaged by relocating with him. Again, he didn't mention the endangerment subsection or argue that the endangerment standard applied.

¶ 15    Nonetheless, father asserts that he wasn't required to preserve his argument because, according to him, a court's application of the law is part of the "merits" of its ruling, and a party may appeal the merits of a court's ruling regardless of preservation. He also claims that he didn't have the opportunity to preserve his argument before the court issued its order applying the allegedly incorrect legal standard.[1]

¶ 16    We need not decide whether father was required to preserve his argument because, even assuming without deciding that the argument is properly before us, we discern no error.

## 2.    Analysis

¶ 17    By applying the relocation subsection, the district court implicitly found that the move from Wisconsin to Alaska would substantially change the geographical ties between the child and mother. Moreover, the court expressly found that "Alaska and Colorado are not close to each other" and credited mother's

---

[1] Father also asserts that he preserved his argument by "filing a notice of appeal" and timely appealing the written orders. We agree that father timely and correctly perfected his appeal, but that doesn't address whether he preserved his argument for applying the endangerment standard.

7

testimony "that the [move from Wisconsin to Alaska] w[ould] affect her ability to visit the child as frequently." To that end, the CFI noted that a move from Wisconsin to Alaska would increase the distance between the child and mother from 1,100 miles to 3,100 miles.[2] And the CFI provided a comparison of how travel time and cost would be significantly higher when travelling between Colorado and Alaska as opposed to Colorado and Wisconsin. Thus, the court's implicit finding that the move would substantially change the geographical ties between the child and mother enjoys record support.

¶ 18   We reject father's argument that, because the court could retain the parties' long-distance parenting plan and award mother the same amount of parenting time, the move to Alaska wouldn't have substantially changed the geographical ties between the child and mother. The legislature didn't limit section 14-10-129(2)(c)'s application to relocations that would substantially change the noncustodian's *parenting time*. Rather, the legislature limited

---

[2] The CFI didn't testify at the hearing, but the parties stipulated to the admission of her report. Thus, when we refer to the CFI's statements throughout this opinion, we are referring to the statements in the CFI's report, not testimony.

subsection (2)(c)'s application to relocations that would substantially change the *geographical ties* between the child and noncustodian parent.  *See Byers Peak Props., LLC v. Byers Peak Land & Cattle, LLC,* 2026 CO 7, ¶ 25 (in construing a statute, we respect the legislature's choice of language).

¶ 19     Based on the foregoing, we discern no error in the district court's implicit finding that father's proposed relocation would substantially change the geographical ties between the child and mother.  As a result, the court didn't err by applying the relocation subsection and the best interests standard in evaluating father's motion to relocate with the child.  *See Ciesluk,* 113 P.3d at 140-42; *DeZalia,* 151 P.3d at 649-50.

### C.     Denial of Father's Motion to Relocate

¶ 20     Father also contends that the district court abused its discretion by denying his motion to relocate because the evidence didn't support the court's findings and its decision wasn't in the child's best interests.  We aren't persuaded.

¶ 21     After the contested hearing, the district court entered a thorough and detailed written order.  The court began its analysis by recognizing that, under section 14-10-129(2)(c) and *Ciesluk,*

there was no presumption in favor of either parent even though father had been the primary custodian leading up to the hearing. The court then carefully considered the relocation factors under section 14-10-129(2) and the best interests factors under section 14-10-124(1.5)(a). It made findings related to every factor, and the record supported those findings. Based on those findings, the court determined that it was in the child's best interests to live primarily with mother in Colorado, and it modified the parenting time orders to reflect that determination.

¶ 22    Father makes specific challenges to the following portion of the district court's order:

> First, the absence of extended family in either location evens the scales in terms of location. Second, the Court agrees with Mother that the timing of the evaluation is problematic. Mother flagged these concerns years ago, but Father took no action even when he demonstrated awareness of a potential issue. Third, the Court has concerns about Father isolating the child. The Court therefore finds it in the child's best interest that the child live in Colorado during the school year. Finally, the Court also agrees with the CFI's analysis in terms of where the parents are at in terms of

their ability to devote time and energy to the child.[3]

¶ 23    We address each of these findings in turn.

1.    "Problematic Timing" of the Child's Evaluation

¶ 24    First, father asserts that the evidence didn't support the court's finding about the "problematic" timing of the child's autism spectrum disorder (ASD) evaluation. But the record belies father's assertion.

¶ 25    At the hearing, father admitted that mother had previously raised concerns that the child may have ASD. But mother testified that father didn't initiate any discussion about having the child evaluated for ASD until after the CFI filed the report, which

---

[3] Father appears to assert that this quoted portion of the district court's order was its only reasoning for denying his motion to relocate. But that isn't the case. Rather, the court made numerous other findings supporting its decision, including: (1) although father may have more financial freedom in Alaska, no evidence showed that Alaska would provide a "qualitatively better situation" than Wisconsin, nor did the evidence show that Alaska was "better" for the child than Colorado; (2) after permanent orders entered, mother had spent "significant time with the child" and "a lot of time, effort, and money to make sure she remained a part of the child's life"; (3) the child would have to attend a new school regardless of whether she moved to Alaska with father or to Colorado with mother, so some transition was inevitable; and (4) the child had "more experience living in Colorado in the recent past," and Colorado would be "more familiar" to the child than Alaska.

recommended that the court deny father's motion to relocate. Further, the parents' online messages were admitted as evidence and showed that mother's response to father's request for her consent was, "Wow! What makes you want to get [the child] evaluated now? I've literally been suggesting we do this for years." Mother agreed to have the child evaluated one month before the relocation hearing. But, according to mother, when the provider the parties agreed on couldn't evaluate the child before the relocation hearing, father took the child to be evaluated by a different provider that mother hadn't consented to.

¶ 26 Based on the foregoing, we conclude that ample evidence supported the court's finding that the timing of the child's evaluation was "problematic" as it related to the timing of the CFI's report and the hearing. Although the evidence could have supported a different conclusion, that doesn't mean that the court abused its discretion. *See In re Marriage of Nelson*, 2012 COA 205, ¶ 35 (even when evidence in the record could have supported a different conclusion, we won't substitute our judgment for that of the district court).

¶ 27    Accordingly, we reject father's argument that the court erred by finding that the timing of the evaluation was "problematic."

### 2.    Concerns About Isolating the Child

¶ 28    Second, father asserts that the evidence didn't support the court's "concerns about father isolating the child." Again, the record shows otherwise.

¶ 29    In addition to the finding that father points us to, the court noted that a "very significant factor" in its prior orders, which allowed the child to live primarily with father in Wisconsin, was the child's connection to extended paternal and maternal family who lived there. The court found that since the prior orders, father had "declined (or made no effort)" to allow the child to see her extended family in Wisconsin. The court found that "not furthering" those relationships increased the court's concerns about father isolating the child and showed that father wasn't putting the child's needs first.

¶ 30    The record supported those findings. The CFI stated, and father admitted, that he had never taken the child to see her maternal extended family during his parenting time and that the child didn't have a relationship with her paternal extended family

because father was estranged from them. Moreover, the CFI said that "father and the child's daily routine involves much time with only the two of them together," which was "absolutely invaluable" but also showed that father could be "somewhat reclusive at times." The CFI also said that the child primarily interacts only with father "to the apparent exclusion of other adults in her life."

¶ 31 As father points out, he testified that he had some friends in Alaska and that he had always encouraged the child to participate in social and extracurricular activities. But the court heard that testimony and still expressed concerns about isolation in its findings. And we can't reweigh the evidence or disturb the court's findings when, as here, they have record support and are based on credibility determinations. *See Nelson,* ¶ 35; *see also In re Marriage of Hatton,* 160 P.3d 326, 330 ("It is the responsibility of the trial court as the trier of fact to determine the credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence.").

¶ 32 Accordingly, we reject father's argument that the court erred by finding that a move to Alaska would isolate the child.

### 3. Ability to Devote Time and Energy to the Child

¶ 33 Next, father argues that the district court's reliance on the CFI's analysis "in terms of [the parents'] ability to devote time and energy to the child" wasn't in line with its decision to deny his motion to relocate. He argues that the CFI's analysis didn't support the court's implicit finding that mother would be able to devote more time and energy to the child than father. The record shows the opposite.

¶ 34 True, the CFI acknowledged father's close relationship with the child and identified many positive aspects of father's parenting. But the CFI also stated that mother would be "better equipped" to support the child if she moved to Colorado because mother's "life in Colorado [was] already established making [her] slightly more stable than father." The CFI noted that "mother, unlike father, [was] already established in her home, job, and community," so she would be "better able to focus on [the child] and her needs as she [became] accustomed to her new world." Further, the CFI said that while father's move to Alaska could result in more financial stability, his plan was "laden heavily with unknowns." He would be "starting a relatively new job, in a relatively new state, with a new

home [and] relatively new partner." Noting that mother was committed to staying in Colorado, the CFI opined that "the child's need for stability, continuity and family involvement, especially with Mother, outweigh[ed] any financial benefit in relocating to Alaska."

¶ 35 Based on the foregoing, we reject father's assertion that the CFI's analysis didn't support the court's implicit finding that mother would be able to devote more time and energy to the child than father.

### 4. Best Interests of the Child

¶ 36 Finally, father argues that the district court didn't sufficiently consider the child's wishes and that its ultimate decision wasn't in the child's best interests. To get there, father points us to evidence that was favorable to him and argues that such evidence showed that it was in the child's best interests to move to Alaska with him. By doing so, father urges us to reweigh the statutory factors and evidence in his favor to substitute our judgment for that of the district court. But we can't do that. *See Nelson*, ¶ 35; *see also In re Marriage of Udis*, 780 P.2d 499, 504 (Colo. 1989) (an appellate court may presume that the district court considered all admitted evidence).

16

## D. Conclusion

¶ 37　In sum, because the district court applied the correct legal standard and the evidence supported its decision, we can't say that it exceeded its broad discretion by denying father's motion to relocate and ordering that the child live primarily with mother in Colorado.

## III. Disposition

¶ 38　We affirm the order.

JUDGE FOX and JUDGE KUHN concur.