25CA0749 Marriage of Fry 04-09-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0749
El Paso County District Court No. 21DR32654
Honorable Hilary Gurney, Judge

In re the Marriage of

Nicholas Robery Fry,

Appellant,

and

Vanessa Marie Fry,

Appellee.

ORDER AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Brown and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 9, 2026

Price Family Law, LLC, Trista Price, Denver, Colorado, for Appellant

Helland & Hurwitz Attorneys at Law, Alexander Masterson, Colorado Springs, Colorado, for Appellee

¶ 1    In this post-dissolution of marriage case between Nicholas Robert Fry (father) and Vanessa Marie Fry (mother), father appeals the district court's order granting mother's motion to relocate to New York with their two children.  We affirm.

## I.    Relevant Facts

¶ 2    In 2023, the court dissolved the marriage and ordered the parents to exercise equal parenting time.

¶ 3    Mother later remarried.  She then filed a motion to modify parenting time, seeking to relocate with the children to New York.  Mother explained that her husband, who was serving in the military, had been transferred to New York, and she believed that it was in the children's best interests to live primarily with her and her husband in New York.  Father objected and asked that, if mother moved, the court order the children to live primarily with him in Colorado.

¶ 4    After a hearing, the court granted mother's motion to relocate.  The court acknowledged that mother said she would remain in Colorado if the court denied her motion to relocate.  But the court clarified that it could not "prohibit [m]other from her right to travel and her ability to relocate."  The court explained that it must

1

consider her motion with the understanding that she was moving to New York and then determine whether it was in the children's best interests to move with mother to New York or to stay with father in Colorado.

¶ 5 The court made the following findings:

- The children were five and seven years old.

- Each parent wanted to have the children reside primarily with them during the school year, allowing the other parent to exercise parenting time during school breaks.

- Both parents had strong relationships with the children and were good parents.

- The children had a "strong relationship" with mother's husband.

- The children had "some substantial relationships" with "others" in Colorado, noting father's grandmother, father's new wife, the children's stepsister, and the children's step-grandfather.

- Mother made "substantial efforts to encourage the children to share . . . love, affection, and contact" with

father and his family, and she was able to place the children's needs ahead of her own.

- Father exhibited a pattern of coercive control and domestic violence that sought to harm or punish mother.

- Father's conduct "raised concerns" about his ability to encourage the sharing of love, affection, and contact between the children and mother, and he was "unable to fully place" the children's needs above his own.

- Both parents were "primary caregivers" to the children.

- In New York, mother would enjoy increased financial stability and family support from her husband, which together would increase her "happiness" and provide the children "a more stable home life."

- The children had additional educational opportunities in New York.

- No extended family members lived in New York.

- The majority of the children's extended family lived in Arizona, and the children would need to travel long distances to visit their family whether they lived in Colorado or New York.

¶ 6    After considering these and other relevant circumstances, the court determined that it was in the children's best interests to relocate with mother.

## II.    Discussion

¶ 7    Father contends that the district court's order should be reversed.  He argues that the court erred by (1) improperly importing into this post-permanent orders proceeding the legal standard applicable to a parent's pre-permanent orders request to relocate with their children; (2) refusing to consider mother's admission that she would remain in Colorado if the court denied her relocation request; and (3) weighing the resulting benefits from mother's relocation as though she was the children's primary caregiver.  We reject his contentions.

### A.    Standard of Review

¶ 8    The district court has broad discretion when deciding a parent's request to relocate and modify parenting time.  *See In re Marriage of Ciesluk*, 113 P.3d 135, 148 (Colo. 2005); *In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 13.  We exercise every presumption in favor of upholding the court's decision and will not disturb it absent a showing that the court

acted in a manifestly arbitrary, unreasonable, or unfair manner, or that the court misapplied the law. *S.Z.S.*, ¶ 13. We review de novo whether the court applied the proper legal standard. *In re Marriage of Badawiyeh*, 2023 COA 4, ¶ 10.

### B. Governing Law on Relocation

¶ 9 A parent's request to relocate with their children presents the court with a unique challenge. *Ciesluk*, 113 P.3d at 142. The court must balance a parent's constitutional right to travel, the parents' fundamental right to parent their children, and the children's best interests. *Id.*

¶ 10 When a parent states their intent to relocate before permanent orders are entered, the court cannot issue an allocation of parenting time that orders a parent to live in a specific location. *Spahmer v. Gullette*, 113 P.3d 158, 164 (Colo. 2005); *In re Marriage of Morgan*, 2018 COA 116M, ¶ 6. The court must accept the location where the parents intend to live and allocate parenting time in the children's best interests based on the parents' intended locations. *Spahmer*, 113 P.3d at 164; *Morgan*, ¶ 6. In doing so, the court considers all relevant factors, including those listed in section 14-10-124(1.5)(a), C.R.S 2025. *Spahmer*, 113 P.3d at 162. When

the court makes this initial determination of parenting time, the parents stand on equal ground because neither has vested parenting time rights.  *Id.* at 163.

¶ 11    After the entry of permanent orders, a court determining a parent's request to relocate must engage in a more robust evaluation, considering additional factors that account for the parenting rights established by the existing orders.  *See Ciesluk,* 113 P.3d at 140.  The court therefore must consider not only the best interests factors in section 14-10-124(1.5)(a) but also the factors in section 14-10-129(2)(c), C.R.S. 2025.  *Ciesluk,* 113 P.3d at 140; *In re Marriage of DeZalia,* 151 P.3d 647, 648 (Colo. App. 2006); *see also Spahmer,* 113 P.3d at 163 ("[T]he goal of dissolution proceedings is to create a stable situation between the new family units arising out of the divorce, whereas the goal of a modification proceeding is to maintain this stability, if possible, in the best interests of the child.").  The court may not presume that the children are better off or disadvantaged by relocating.  *Ciesluk,* 113 P.3d at 147.  It must begin its analysis with each parent on equal footing and place the burden equally on each of them to persuade

the court that the relocation will be in or will be contrary to the children's best interests. *Id.* at 148.

¶ 12    Therefore, the parent seeking to relocate must present evidence about the children's living conditions in the proposed relocation and show how the move serves the children's best interests. *Id.* at 147. By contrast, the parent opposing the relocation must present evidence to show why the proposed relocation is contrary to the children's best interests. *Id.* When doing so, that parent may choose to (1) contest the relocation in its totality and seek to become the primary residential parent; or (2) not contest the relocation but object to the revised parenting plan proposed by the relocating parent. *Id.*

        C.    Accepting Mother's Intent to Move to New York

¶ 13    Father argues that the district court gave mother an unequal advantage by applying the "less stringent" standard applicable to a pre-permanent orders relocation. To get there, he argues that the court improperly began its analysis by accepting that mother would be residing in New York. Father thus suggests that while a court must accept the location in which a parent intends to live when

considering a pre-permanent orders relocation request, it cannot do the same for a post-permanent orders relocation. We disagree.

¶ 14    Father relies on *Spahmer,* in which the supreme court differentiated between the standards for a pre-permanent orders relocation and a post-permanent orders relocation. 113 P.3d at 162-64. He highlights that, in *Spahmer,* the court held that "in the initial determination of parental responsibilities, the plain language of subsection 14-10-124(1.5) indicates that a trial court must accept the location in which each parent intends to live, and allocate parental responsibilities, including parenting time, accordingly." *Id.* at 164. Continuing, he points out that the supreme court said that "[h]ad the General Assembly wanted the trial courts to have the authority to dictate the domicile of the parents, then it would have instructed courts to engage in an analysis akin to that set forth in subsection 14-10-129(2)(c)." *Id.* at 163-64.

¶ 15    However, *Spahmer* did not say that a district court may not accept the location a parent intends to live in when determining a post-permanent orders relocation. Rather, the supreme court highlighted that when the court makes an initial parenting time

8

determination "each party is as likely as the other to become the majority time parent based on a best interests analysis." *Id.* at 163. It then observed that, in post-permanent orders proceedings, "the parties are on unequal grounds with respect to parental responsibilities," "[o]ne party has already been *named the majority time parent,*" and the "court has already rendered judgment as to issues such as parenting time and decision-making responsibilities." *Id.* (emphasis added).

¶ 16    Here, mother and father shared equal parenting time with the children. Therefore, neither had been designated a majority time parent. As a result, mother's request to relocate with the children and modify the equal allocation of parenting time resembled an initial allocation of parenting time. *See DeZalia,* 151 P.3d at 649-50; *In re Marriage of Garst,* 955 P.2d 1056, 1060 (Colo. App. 1998); *see also In re Marriage of Stewart,* 43 P.3d 740, 742 (Colo. App. 2002) ("[I]n instances where the parties share equal parenting responsibilities, any subsequent modification of that arrangement is governed by the best interests standard."). The parents shared the legal and physical care of the children, and each of them was as likely as the other to become the majority time parent based on the

9

court's analysis of the children's best interests. *See Spahmer*, 113 P.3d at 163; *DeZalia,* 151 P.3d at 649-50; *Garst,* 955 P.2d at 1060. Mother sought to become the majority time parent in New York and father sought to become the majority time parent in Colorado. *See* § 14-10-124(1.5)(a)(I) ("In determining the best interests of the child for purposes of parenting time the court shall consider all relevant factors, including . . . [t]he wishes of the child's parents as to parenting time."). Thus, the court's decision was akin to a pre-permanent orders relocation request to the extent that the court could accept the location where mother intended to live when considering her motion. *See Spahmer,* 113 P.3d at 163; *DeZalia,* 151 P.3d at 649-50; *Garst,* 955 P.2d at 1060.

¶ 17    But the court also addressed the factors identified in section 14-10-129(2)(c). The district court recognized that *Ciesluk* and the post-permanent orders standard applied to its analysis. It understood that it had to accept that mother intended to move to New York to properly consider her request to relocate and determine the children's best interests. The court then thoroughly addressed and made findings on the statutory best interests factors under section 14-10-124(1.5)(a) and the additional factors in section

14-10-129(2)(c). The court weighed those factors and the relevant circumstances, and it determined, with record support, that granting mother's request to relocate served the children's best interests. *See Ciesluk*, 113 P.3d at 147 (recognizing that the district court weighs the statutory factors when making its best interests determination); *see also In re Marriage of Newell*, 192 P.3d 529, 534 (Colo. App. 2008) ("Because the evidence was conflicting as to which of the parenting time plans under consideration would best serve the child's need[s] . . . , we defer to the [court's] choice.").

¶ 18    We therefore do not agree with father that the court misapplied the law by accepting mother's intent to move to New York when considering her motion to relocate.

D.    Mother's Admission Concerning Remaining in Colorado

¶ 19    Father next argues that the district court erred by "refusing to consider" mother's admission that she would remain in Colorado if the court denied her request to relocate. We disagree.

¶ 20    The court noted that mother would not leave Colorado without the children, but as discussed above, the court correctly determined that it must evaluate mother's motion to relocate with the understanding that she intended to move to New York. *See*

11

*Spahmer*, 113 P.3d at 163; *DeZalia*, 151 P.3d at 649-50; *Garst*, 955 P.2d at 1060. It further explained that in considering mother's request it was not deciding whether it was best for the children if mother stayed in Colorado (and continued the equal parenting time plan) or moved to New York. Rather, it needed to decide whether it was in the children's best interests to move with mother to New York or stay with father in Colorado. *See Ciesluk*, 113 P.3d at 147-48.

¶ 21 The court did not err by declining to consider mother's admission that she would remain in Colorado if the court denied her request to relocate. Such a consideration was necessary only if after the court completed its analysis, it denied mother's motion to relocate. *See id.* at 148. Because the court granted mother's request, it did not need to consider her admission.

E. Considering the Benefits to Mother from the Relocation

¶ 22 Father also contends that the district court erred by weighing in mother's favor the indirect benefits to the children related to mother's improved circumstances because of the relocation. We are unpersuaded.

12

¶ 23    The factors in section 14-10-129(2)(c) include a court's consideration of "[a]ny advantages of the child remaining with the primary caregiver." § 14-10-129(2)(c)(VI). When evaluating this factor, the court may consider the "indirect benefits" to the children as a result of the direct benefits enjoyed by a parent, including increased financial stability, family support, and happiness. *Ciesluk*, 113 P.3d at 148.

¶ 24    The court found that mother's relocation would financially benefit the family, observing that her job in New York would pay her approximately $20,000 more per year, she would enjoy a lower cost of living, and she would no longer need to maintain her two separate homes — one in Colorado and one in New York. It also found that mother would have "more family support" in New York with her husband. The court determined that these circumstances "increase [m]other's happiness" and gave the family "a more stable home life," benefiting the children.

¶ 25    Father suggests that the court's findings were improper because, under section 14-10-129(2)(c)(VI), the relevancy of these circumstances was tied to mother being the children's "primary caregiver," which she was not. The parents shared equal parenting

time, and thus neither was a true primary caregiver for the children. *See Ciesluk*, 113 P.3d at 148 (recognizing that the majority time parent was the primary caregiver). But section 14-10-129(2)(c)(VI) was not the only factor relevant to the court's findings. Indeed, the court also considers under section 14-10-129(2)(c), "[t]he reasons why the party wishes to relocate with the child[ren]" and "[t]he anticipated impact of the move on the child[ren]." § 14-10-129(2)(c)(I), (VII). The court found, with record support, that the reasons for mother's relocation would not only benefit mother but also indirectly benefit the children. The court's consideration of those circumstances was not limited to a primary caregiver under section 14-10-129(2)(c)(VI). We thus are not persuaded that the court abused its discretion by weighing the indirect benefits from mother's relocation along with the other relevant factors when it granted her motion to relocate. *See Ciesluk*, 113 P.3d at 147.

¶ 26    Further, father argues that the court erred by not considering the indirect benefits related to the children remaining with him in Colorado. However, he does not identify anything specific in the record that the court did not address or consider related to his

14

circumstances. We presume the court considered all the evidence. *See Collins*, ¶ 21. And the court was not required to make specific findings on every factor. *See In re Marriage of Pawelec*, 2024 COA 107, ¶ 44. The court made the relevant findings, its ruling provided a clear understanding of the basis of its decision, and the record supported that decision. *See id.* We therefore will not set aside the court's order. *See S.Z.S.*, ¶ 28 (declining to reweigh the court's resolution of the conflicting evidence when the court's determination was supported by the record); *In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (noting that credibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn from the evidence, are matters within the district court's sole discretion).

¶ 27 In sum, the court did not abuse its discretion by granting mother's motion to relocate with the children.

## III. Disposition

¶ 28 The order is affirmed.

JUDGE BROWN and JUDGE SCHUTZ concur.